LOTTINGER, Chief Judge.
This is a suit for declaratory judgment seeking a judicial interpretation of a purchase option clause contained within a long-term lease contract affecting some 95,000 acres of non-contiguous timberlands situated in five Louisiana parishes.[1] The plaintiff-appellants are Denkmann Associates, Den-miss Corporation and 48 individual mineral distributees (hereafter, collectively referred to as “Denkmann” or “plaintiffs-lessors”). The defendant-appellees are IP Timberlands Operating Co. Ltd. and International Paper Company (hereafter, collectively referred to as “IP” or “defendants-lessees”).
Previously, both parties filed separate suits for declaratory judgment seeking a judicial determination as to their rights under the lease agreement. These actions were consolidated prior to trial, and later, this court, through our earlier opinion in IP Timberlands Operating Company, Limited v. Denmiss Corporation, 93-1687 (La.App. 1st Cir. 5/23/95), 657 So.2d 282, writs denied, 95-1593, 95-1691, 95-1958 (La.10/27/95), 661 So.2d 1348, upheld the jury’s finding that the lease agreement was not terminated, and that the option clause contained therein was valid and enforceable.
Following a denial of writs by the Louisiana Supreme Court, plaintiff-lessors filed the present action seeking a judicial clarification of the provisions of the option clause. In response, defendant-lessees filed peremptory exceptions and argued that consideration of the issues raised by plaintiffs-lessors was barred by res judicata. Plaintiff-lessors now appeal the dismissal of their suit following the trial court’s granting of defendant-lessees’ exception.
BACKGROUND and PRIOR COURT PROCEEDINGS
As we have noted, this is not the first time the parties hereto have appeared before this court. We will, therefore, turn to our previous decision in Timberlands for a recitation of the pertinent background history of the parties:
During the early 1940s, the timberlands in question were owned by Natalbany Realty Company and Natalbany Lumber Company (collectively, “Natalbany”), the latter having been formed in 1902 to operate the Natalbany sawmill as a joint project of the Denkmann and Weyerhaeuser families. By December of 1941, Natalba-ny’s timberlands were in poor condition, and the corporation was deeply indebted to its sister company in Mississippi, Denk-mann Lumber Company. Natalbany’s board of ^directors decided to implement a plan to wind up the affairs of the insolvent company.
First, Natalbany granted a comprehensive oil and gas lease to Cities Service Oil Co. covering the minerals underlying the Louisiana lands. Then, subject to the lease, Natalbany transferred its mineral rights to its own shareholders, the “mineral distributees”[2] previously identified. *1093 Finally, Natalbany transferred the timber and the land, less the mineral rights, to Denkmann Lumber Company, which accepted the dation valued at $471,828 in partial satisfaction of Natalbany’s debt.
In 1945 Denkmann Lumber Company entered into a contract (“1945 Agreement”) with a subsidiary of IP, Southern Kraft Timberland Corporation (“Southern Kraft”). Denkmann (as “vendor”) conveyed to Southern Kraft (as “vendee”) “the timber, trees, wood and other forest products ... standing, growing and being situated, or that may in the future ... stand, grow or be situated” on 95,000 acres for a term of 99 years. Consideration for the “sale,” the “lease,” and the “future operating and cutting privileges” was a cash price equal to the fair market value of the standing timber, which amounted to $2,445,000. Additionally, Southern Kraft obligated itself to pay annual taxes on the land and the timber, including any severance taxes on the timber but excluding any taxes separately assessed on minerals or increases in the land assessments directly caused by mineral development. There was no general termination provision in the 1945 Agreement.[3]
The vendee’s use of the land was to be governed by good forestry practices, and the 1945 Agreement specified:
“It is agreed and recognized that one of the primary purposes for which the Vendee hereunder is acquiring said property and its rights hereunder, is the right to use the said lands in the future during the life of this contract for the purpose of growing timber, wood and other forest products, and promoting the supply, stand and growth of timber, wood and forest products on the land, and removing and marketing the same from time to time and at will, which right of the Vendee is in the nature of a lease of the land upon which the timber stands for said purposes, and that the consideration paid herefor covers all such rights and privileges as herein provided, in addition to the purchase of the timber, wood and other forest products presently on said property.”
Denkmann reserved to itself the “right to make and grant any and all oil, gas, gravel and other mineral leases and contracts necessary |5or desirable to the full mineral development of the said lands.... ” The reservation included the surface rights necessary for the performance of mineral contracts and for full mineral development. Southern Kraft agreed that if Denkmann required “exclusive” use of any of the lands for mineral development, Denkmann’s right would be “paramount” to any rights being conveyed in the 1945 Agreement, provided the value of forest products lost or damaged be paid.
Finally, the 1945 Agreement contained an option to purchase the land, which option was to be exercised any time between January 1, 1986, and December 31, 1995. Denkmann granted Southern Kraft the option subject to a “full reservation” to itself of all mineral rights. The option clause provided that three arbitrators would be named to fix a price when the option was exercised.
Twenty-four years after the 1945 Agreement, the parties signed a second agreement (“1969 Agreement”), confirming the parties’ interpretation of the first one. The only additional rights conveyed in the 1969 Agreement dealt with sub-leases for recreational purposes, such as, hunting and fishing leases.
[[Image here]]
On August 15, 1986, IP filed in federal court an action seeking relief in the form of a declaratory judgment interpreting the option clause in the 1945 Agreement and an injunction prohibiting Denkmann from interfering with IP’s rights under the *1094 Agreement, including the option granted to IP.
On the same date, August 15, 1986, the Denkmann corporations, but not the individual mineral distributees, filed an action seeking damages for breach of contract and termination of the 1945 Agreement. Denkmann alleged that the contract had been breached in the following ways: 1) failure to use good forestry practices; 2) allowing encroachments on the land with resultant losses of acreage to third parties; 3) unauthorized permitting of trash sites to be established on the lands; and 4) unauthorized grants of surface leases to third parties. Additionally, Denkmann alleged that the 1945 Agreement had expired in 1975 by operation of law because the provisions of the 1945 Agreement amounted to a usufruct to a corporation, which is limited to a 30-year duration.
Two years after the filing in federal court, on November 15, 1988, the Denk-mann corporations amended their complaint to allege breach by mineral trespass, and the mineral distributees became parties.
IfiThe actions were consolidated in federal court, but later they were dismissed for lack of diversity [4] and refiled in state court.[5]
After the parties were realigned to designate Denkmann as plaintiffs and IP as defendants, the trial began on September 23,1991. At the end of a four-month trial, the court provided the jury with 21 questions to be answered in rendering its verdict. The jury returned its verdict on January 24,1992.
The jury found that the 1945 Agreement was a sale of the standing and “future” timber and a lease of the land, not a limited “right to cut” the standing timber and a “usufruct” as Denkmann contended. The jury found no breach of contract by failure to use good forestry practices, by encroachments, by trash sites, or by inter-ferenee with minerals. The jury did find a breach occurred by IP’s surface sub-leasing and found that damages for that breach amounted to $100,000. However, the jury found the contract divisible and rejected Denkmann’s prayer for termination of the contract. [Reference omitted.]
As to the pleas of prescription and es-toppel made by IP, the jury made the following responses: that Denkmann Associates and Denmiss Corporation knew or should have known of the damage prior to December 19, 1975, in reference to the allegations of good forestry practices, encroachments, waste sites, surface leasing, and interference with minerals; that the mineral distributees knew or should have known of their damages prior to December 19, 1984, and prior to December 19, 1975; that the two Denkmann corporations were estopped from terminating the 1945 Agreement. The jury also found that the option clause was enforceable. [Reference omitted.]
On February 27, 1992, the trial judge rendered a judgment purportedly pursuant to the jury verdict, awarding Denkmann $100,000 in damages for surface leasing, denying termination of the contract, declaring the option enforceable, and ordering specific performance of Denkmann’s obligations under the option clause.
IP filed two post-trial motions: a motion to conform the judgment to the jury verdict, or, in the alternative, a motion for a partial JNOV. Denkmann also filed two post-trial motions: a motion for JNOV or, in the alternative, a motion for new trial.
The trial court denied both of IP’s motions, but granted part of Denkmann’s motion for JNOV. The trial court found that the granting of permits for geophysical exploration by the defendants violated the 1945 Agreement and entitled plaintiffs to damages for interference with mineral in *1095 terests. In granting the partial JNOV, the trial court noted that Denkmann had met its burden of showing that the facts and reasonable inferences pointed so strongly and overwhelmingly in its favor that reasonable persons could notj^mrive at a contrary verdict. After determining that a partial JNOY was proper, the trial court awarded an additional $2,056,905 for that element of damage.
The second judgment was rendered on May 10,1998, and both sides to the controversy perfected their appeals.
IP Timberlands Operating Company, Limited v. Denmiss Corporation, 93-1637, at pp. 3-8, 657 So.2d at 287-289.
In our decision in the aforementioned case, we vacated that portion of the judgment which awarded $100,000.00 to Denkmann as damages for IP’s unauthorized surface leasing due to the jury’s determination that said claim had prescribed, and further affirmed the trial court’s grant of judgment notwithstanding the verdict which awarded Denk-mann $2,056,905.00 as damages for IP’s issuance of unauthorized geophysical (seismic) permits on Denkmann lands. This court also affirmed the finding of the jury that: (1) IPTO’s rights under the 1945 agreement were not terminated and (2) the option clause of the 1945 agreement was valid and enforceable.
Thereafter, both Denkmann and IP applied for writs from the Louisiana Supreme Court. Following the supreme court’s denial of both writ requests, Denkmann filed the present action in the 20th Judicial District Court.
BASIS FOR PRESENT DISPUTE AND ACTION OF THE TRIAL COURT
Through the instant action, Denkmann seeks a declaratory judgment as to whether the language of the 1945 agreement requires that the parties determine the price for the land through appraisal, or as IP contends, through a quasi-judicial arbitration process. Additionally, Denkmann seeks a judicial determination as to whether application of the doctrine of confusion would extinguish IP’s existing lease and further, preclude a reduction in the price which IP would pay for the lands in question. Prior to filing its answer to Denkmann’s petition, IP filed various exceptions raising objections of res judicata, no cause of action, prematurity and lis pendens. Without ruling on IP’s remaining exceptions, the 20th Judicial District Court granted IP’s exception as to res judicata, and thereafter dismissed with prejudice Denkmann’s petition for declaratory judgment. From this judgment, Denkmann now appeals.
ISSUES PRESENTED FOR REVIEW In connection with its appeal in this matter, Denkmann asks us to consider the following issues:
Ll. Did the trial court err in granting IP’s peremptory exception of res judicata, and by implication, determining that the purchase option contained within the 1945 lease agreement contemplates arbitration?
2. Is the doctrine of confusion applicable, which would mean that IP would be required to pay the full, undiscounted fair market value for the lands purchased?
RES JUDICATA
At the outset, we are called upon to determine whether the trial court erred in holding that the doctrine of res judicata precludes consideration of the issues raised by Denk-mann in the present action.
The preclusive effect and authority of a judgment rendered in an action filed before January 1, 1991, are determined by the law in effect prior to that date. Acts 1990, No. 521, § 5. Although the present suit was filed on November 30,1995, the previous litigation was filed in 1990[6]. Therefore, in deciding this issue, we are obliged to apply the law as it existed prior to January 1,1991.
Prior to the 1990 amendment to La. R.S. 13:4231 which took effect on January 1,1991, that statute read as follows:
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand *1096 must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.

See Historical and Statutory Notes, La. R.S. 13:4231.

The courts also have recognized these as necessary elements to preclude re-litigation of the object of a judgment, clearly requiring: (1) an identity of the parties; (2) an identity of “cause”; and (3) an identity of the thing demanded. Ortego v. State, Department of Transportation and Development, 96-1322, p. 6 (La.2/25/97), 689 So.2d 1358, 1363 (Citations omitted.) The burden of proof is upon the pleader to establish the essential facts to sustain the plea of res judicata. Insurance Associates, Inc. v. Francis Camel Construction, Inc., 95-1955, p. 3 (La.App. 1 Cir. 5/10/96), 673 So.2d 687, 689. If any doubt exists as to its application, the exception of res judicata must be overruled and the second suit maintained. Terrebonne v. Theriot, 94-1632, p. 4 (La.App. 1st Cir. 6/23/95), 657 So.2d 1358, 1361, writ denied, 95-2249 (La.11/27/95), 663 So.2d 743. Further, a final judgment has the authority of res judicata only as to those issues presented in the pleadings and conclusively adjudicated by the court. Id.
It is apparently undisputed that both suits involve the identical parties. The questions now before us are whether the “cause”[7] of both suits, as well as the “thing demanded”[8] are similarly identical. The trial court, in upholding the objection of res judicata, stated, “[i]n the broad sense of the word, the cause is the same.... I think the cause is the validity and enforceability of the 1945 option allowing three persons to resolve the issue of compensation for the purchase of the land.”
In its appeal to this court, Denkmann asserts that the prior litigation in the 19th JDC only addressed (1) whether IP had breached the 1945 lease agreement, and if so, whether Denkmann was entitled to dissolution and/or damages as a consequence thereof; and (2) the enforceability of the option clause. Denkmann further asserts that the present action in the 20th JDC does not seek the same relief, but rather, requests a determination as to the manner in which the parties are to determine the purchase price provided for under the option clause, and whether the lands are to be sold subject to the remaining term of the lease agreement.
Conversely, IP argues that the filing by Denkmann of the present action in the 20th JDC constitutes an impermissible collateral attack on the final judgment of the 19th JDC. Specifically, IP points to language, in the written reasons issued by the 19th JDC in response to both parties’ subsequent motions for JNOV, which states, in essence, that where arbitration is contained as a provision in a contract, public policy, as well as the laws of this state, favor the upholding of arbitration, and any doubt in the arbitration provisions should be resolved in favor of arbitration. Based on this language, and this court’s subsequent affirmation, “in all other respects” of the trial court’s judgment, IP contends that this court confirmed that the purchase | loprice of the option clause was to be determined by arbitration. Additionally, IP argues that this court, through the language of its earlier opinion in IP Timberlands Operating Company, Limited v. Denmiss Corporation, 93-1637, at pp. 4-5, 657 So.2d at 312-313, previously determined that the only interest which Denkmann can sell is its naked ownership in the land, burdened by the lease in favor of IP. IP concludes by *1097 stating that even if this court had not specified the interest to be sold, said issue would be for the arbitrators, not the courts, to decide.
Upon careful review of this matter, and in light of the foregoing, it is evident to this court that the “thing demanded” in Denk-mann’s previous action was, as we have noted, dissolution of its existing lease with IP, and the enforceability of the option clause contained therein. In the present action, Denkmann does not seek to dissolve the lease, nor does it ask that the option clause be declared unenforceable; the relief sought by Denkmann in the case sub judice is (1) whether the option clause mandates that the price for the lands be determined through arbitration, and (2) whether IP’s purchase of the land extinguishes its lease through the application of the doctrine of confusion. Clearly, the “thing demanded” in the present suit is not identical to the relief sought by Denkmann in the previous litigation. Accordingly, the exception pleading the objection of res judicata was improperly granted.
Having said this, we are now confronted with the dilemma of how best to proceed. For its part, IP urges us to affirm the trial court’s dismissal of Denkmann’s suit, and permit any remaining issues to be resolved through arbitration. Conversely, Denkmann would have us reverse the exception, and render judgment in its favor on the merits. Specifically, Denkmann seeks a declaration from this court that the agreement contemplates appraisal rather than arbitration, and further, that the price to be paid by IP would, through application of the doctrine of confusion, include the value of the land as well as the timber.
This court has never expressly ruled, and moreover, has grave reservations as to whether the 1945 agreement, despite the seeming import of its language, actually requires the parties to submit to a quasi-judicial arbitration proceeding for the determination of a price. We are also uncertain as to whether the doctrine of confusion can be applied where it appears that the vendor has received, in advance, the total consideration due him. Regrettably, adjudication of these matters must be put off to another day, as the present controversy is not ripe for decision.
InUpon careful review of the entire record in this matter, we note that IP has not yet filed an answer to Denkmann’s petition for declaratory judgment, and that the district court has not yet ruled on IP’s remaining exceptions which raise objections of no cause of action, prematurity and lis pendens. While this court is cognizant of its authority, pursuant to La.Code Civ. P. arts. 927(B) and 2163 to consider, for the first time on appeal, a peremptory exception[9], pleaded prior to submission, where proof of the ground upon which it is based appears in the record, it would be inappropriate for us to thereafter rule on the merits of this dispute before the issues have been joined through the filing of an answer.
CONCLUSION
For the foregoing reasons, the judgment of the trial court maintaining IP’s exception pleading the objection of res judicata is reversed, and this matter is hereby remanded to the trial court for further proceedings. All costs of this appeal are assessed to appel-lees, IP Timberlands Operating Co., Ltd. and International Paper Company.
REVERSED AND REMANDED.
FITZSIMMONS, J. concurs in part and dissents in part and assigns reasons.

. The lands in question are situated in southeast Louisiana in the parishes of Livingston, Tangipa-hoa, St. Helena, East Baton Rouge and East Feliciana.

. Footnote 3 in the original text noted that "[o]il and gas are not owed until reduced to possession. Succession of Rugg, 339 So.2d 519 (La. App. 2d Cir.1976), writ denied, 341 So.2d 897 (La.1977). Thus, the term “mineral distributees” *1093 is somewhat misleading, but it is the term which has been used throughout this litigation by both sides, and we will continue using the term.”

. Footnote 4 in the original text noted that "Denkmann reserved a vendor's lien as security for failure of Southern Kraft to pay the cash price. Another clause allowed termination of the contract for failure to pay the taxes. It is undisputed that neither of these conditions came into existence so as to trigger the automatic termination provisions.”

. Footnote 5 in the original text noted "[t]he dismissal was pursuant to a ruling in Carden v. Arkoma Associates, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), that a limited partnership such as IPTO must consider the citizenship of its limited partners for diversity purposes.”

. Following the dismissal of their actions from federal court, the parties refiled their suits in the 19th Judicial District Court.

. The record indicates that the previous action was filed in the 19th JDC on March 12, 1990.

. In its opinion in Ryan v. Grandison Trust, 504 So.2d 844, 850 (La.1987), our Louisiana Supreme Court noted that "[i]t is well accepted that the phrase ‘cause of action’ resulted from a misunderstanding of the French word 'cause' used in the Civil Code of 1808; the French word 'cause' does not mean the same as the English phrase 'cause of action.’ In Mitchell v. Bertolla, 340 So.2d 287 (La.1976), this court equated 'cause' with the juridical or material fact which is the basis of the right claimed, or the defense pleaded.” See also Cantrelle Fence and Supply Company, Inc. v. Allstate Insurance Company, 515 So.2d 1074, 1078 (La.1987).

. The supreme court, in Ryan v. Grandison Trust, 504 So.2d 844, 849 (La.1987), further noted that "[t]he 'thing demanded' has been defined as the ‘kind of relief sought.' Quarles v. Lewis, 226 La. 76, 75 So.2d 14 (1954), overruled on other grounds, 367 So.2d 6 (La.1978).”

. As we have previously noted, IP has previously filed a peremptory exception asserting that the petition filed by Denkmann fails to state a cause of action because the issues raised therein have previously been adjudicated in our ruling in IP Timberlands Operating Company, Limited v. Denmiss Corporation, 93-1637 (La.App. 1st Cir. 5/23/95), 657 So.2d 282, writs denied, 95-1593, 1691, 1958 (La.10/27/95), 661 So.2d 1348.