PETTIGREW, J.
|2PIaintiffs appeal the dismissal of their lawsuit as res judicata due to a prior arbitration. For the reasons set forth below, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
According to the record, plaintiffs, Warren “Chip” Pierrotti and Elizabeth T. Pier-rotti (collectively referred to hereafter as “Pierrotti”), and defendants, Glenn Lee Johnson and Kim Graham Johnson (collectively referred to hereafter as “Johnson”), were years ago partners in multiple business ventures. On January 15, 2004, Pier-rotti and Johnson entered into a Master Settlement Agreement (“MSA”) “to effect a settlement of all claims between the parties.” It was the intent of the parties that by entering into the agreement, they were *1059 settling all claims between them, “whether asserted or not.”
For purposes of this litigation, the important section of the MSA is Agreement # 6, which sets forth the following:
Johnson agrees to transfer to Pierrot-ti or his designee all of Johnson’s right, title and interest in two parcels of real property in which Johnson is a co-owner with Pierrotti, including an office and warehouse facility located at 11862 Clo-verland Court, Baton Rouge, Louisiana, 70808, and a rental parcel located at 3620 Nelson Road, Lake Charles, Louisiana 70605. The consideration for the transfer shall be the assumption of liability by Pierrotti and the release of Johnson from obligations as maker or guarantor; the act of transfer shall not occur until Johnson shall have been fully released as a maker and guarantor of notes and all other obligations associated with the parcels in question. Johnson agrees to execute the act of transfer simultaneously (ie., at the same closing) with his release from the obligations.
Pierrotti agrees that during the period of time between the execution of this agreement and the transfer described in this section, he will maintain the property in good condition at his expense; he will keep casualty and liability insurance in place naming Johnson as an additional insured; and he will service the debt owed to lenders on a regular basis without permitting default. Further, Pier-rotti agrees that he will not encumber the property without the knowledge and consent of Johnson. Johnson agrees that he will have no claim to the rental income earned through leases; and Johnson and Pierrotti agree that Johnson will not be shown as a recipient of passive income or losses for income tax purposes for 2003 or until Johnson transfers the property interests.
In the event that Pierrotti fails to effect the transfer of real property from Johnson within 3 years from the date of this agreement, or in the event Johnson is called upon at any time to make any payment to creditors holding secured interests in the real property parcels, or required to pay delinquent taxes to taxing authorities to prevent the sale of the parcels for unpaid taxes, then the obligation of Johnson to transfer his ownership ^interest to Pierrotti shall, at the option of Johnson, be cancelled. All- of the other obligations of the parties in this agreement shall remain in force and effect, even if the obligations under Agreement # 6 are not fulfilled.
When the parties entered into the MSA on January 15, 2004, both parcels of property listed in Agreement # 6 were mortgaged, and neither Pierrotti nor Johnson owned any equity in the properties. At some point in early 2005, Pierrotti sought to refinance the Cloverland property and arranged, in accordance with Agreement # 6, for Johnson to be “fully released as a maker and guarantor of notes and all other obligations associated” with the Cloverland property. As further intended by the MSA, Johnson executed a document entitled “Act of Donation” on February 28, 2005, transferring his ownership interest in the Cloverland property to Pierrotti.
As evidenced by documents in the record, Johnson transferred his ownership interest in the Cloverland property to Pier-rotti, Johnson was released as a maker and guarantor on all loans and obligations associated with the Cloverland property, and Pierrotti secured a new mortgage on the Cloverland property, which paid off the existing mortgage. For the next 5 years, Pierrotti made monthly payments on the mortgage totaling over $200,000.00. Johnson never made a payment on the mort *1060 gage, nor was he ever called upon to make a payment on the Cloverland property.
According to the record, however, there was a problem with the Nelson property in early 2005. Johnson was contacted by the bank holding the mortgage on the Nelson property and informed that the note was 90 days past due. At that point, Johnson began making monthly payments on the Nelson property. Arbitration was invoked to enforce Agreement # 6 of the MSA. The arbitrator found that pursuant to Agreement # 6 of the MSA, because Johnson had been called upon to make payment on the Nelson property, his obligation to transfer his ownership interest in the property was cancelled. Thus, the arbitrator ruled in Johnson’s favor, cancelling Johnson’s obligation to transfer his ownership interest in the Nelson property to Pierrotti. The award of the arbitrator was signed November 15, 2005. Pierrotti then transferred ownership of the Nelson property to Johnson in exchange for Johnson reimbursing Pierrotti the amounts Pierrot-ti expended for mortgage payments on the Nelson property after the MSA became effective.
| ¿Subsequently, on July 30, 2010, Pier-rotti entered into a purchase agreement to sell the Cloverland property to a third party. During the buyer’s due diligence period, their attorney, Brett Furr, noticed that the title company that handled the refinancing on the Cloverland property had failed to properly record the “Act of Donation” that Johnson had signed transferring his interest in the Cloverland property to Pierrotti. Mr. Furr also noticed that only one witness had signed the “Act of Donation.” Mr. Furr contacted Johnson to obtain corrective documents. Mr. Furr was advised by Johnson’s attorney that Johnson would sign whatever was needed to be signed “in order to uncloud the title.” However, once Mr. Furr presented the documents for signing, Johnson refused to cooperate and acted to obstruct the sale.
On August 17, 2010, Pierrotti filed suit to clear the title to the Cloverland property and recover damages occasioned by Johnson’s actions. Named as defendants were Johnson, Prestige Title, Inc., the company that handled the refinancing of the Cloverland property, and Stephen Col-son, an employee of Prestige Title, Inc. Pierrotti sought a judgment finding that Johnson had transferred all ownership interest in the Cloverland property on February 28, 2005, and ordering that Johnson execute curative documents to formally notice the transaction. Pierrotti also requested damages for lost profits from the sale of the property and costs incurred relative to the lost sale.
In response to the petition, Johnson filed a general denial and exceptions raising the objections of res judicata and no cause of action. Johnson argued that the parties had previously arbitrated Agreement # 6 of the MSA, the section upon which Pierrotti based his alleged claims, and that the previous arbitration award between the parties barred Pierrotti’s suit due to its res judicata effect. The parties subsequently filed competing motions for summary judgment. All of the matters proceeded to hearing before the trial court on April 4, 2011. After hearing argument from the parties, the trial court made the following observations:
Warren Pierrotti, plaintiff, and Glenn Johnson, defendant, were business partners and co-owned two parcels of land, the Cloverland property and the Nelson property.
|fiIn 2003, Mr. Pierrotti and Mr. Johnson wanted to sever their business partnership. On January 15, 2004 they entered into a Master Settlement Agreement, which the Court will refer *1061 to as the M.S.A., to effect a formal separation of all ties between them, both business and personal.
Pursuant to Agreement Number 6 of the M.S.A., Mr. Johnson had an obligation to transfer his interest in either parcel of property as long as that transaction took place on or before January 16th of 2007, and Johnson was not called upon to make any payments to creditors holding secured interest in the property, or required to pay any delinquent taxes before the transfer of the ownership occurred. When the M.S.A. was signed by the parties after it was arbitrated, both the Cloverland and Nelson parcels of property listed in Agreement 6 were mortgaged with personal guarantees by both Pierrotti and Johnson.
In early 2005, the plaintiff sought to refinance the Cloverland property and arrange for Johnson to be fully released as a maker and guarantor of the notes and all other obligations associated with that parcel as required by the [M.S.A.].
The Johnsons claim that Agreement 6 of the [M.S.A.] required Pierrotti, as consideration for the transfer of the two properties, to secure Johnson’s release for the debts affecting both properties. They further claim that Johnson was not released from the obligation to creditors as agreed upon, and therefore, he wants to set aside the transfer at issue. In order to facilitate the transfer of the properties and to comply with the Agreement Number 6 of the [M.S.A.], Johnson executed a purported Act of Donation regarding the Cloverland property; however, the act was not properly recorded, and from there, the problems leading to this litigation ensued.
The Pierrottis now claim that Johnson attempted to or did, in fact, obstruct the sale of the properties for personal gain. The Johnsons have alleged that Pierrotti acted fraudulently.
The Court has carefully examined all the pleadings, the memorandums, exhibits and the law in connection with these exceptions and motions that have been presented to the Court today. Accordingly, the Court finds that the properties and the obligations were indivisible under the [M.S.A.] as consistently the two properties in question were referred to together throughout the [M.S.A.].
The Court hereby grants the exceptions of res judicata and finds that the no cause of action and the motions for summary judgment are moot. Counsel for the Johnsons is to prepare a judgment in accordance with these oral reasons [and] submit it for my signature ....
Judgment was signed by the trial court on May 2, 2011, sustaining the exceptions of res judicata and no cause of action filed by Johnson and dismissing, with prejudice, Pierrotti’s |ficlaims against Johnson.[1] The motions for summary judgment filed by both parties were declared moot. This appeal by Pierrotti followed, wherein several issues relating to res judicata were raised for our review.
*1062 NO CAUSE OF ACTION
The objection that a petition fails to state a cause of action is properly raised by the peremptory exception. La.Code Civ. P. art. 927(A)(5). The purpose of the peremptory exception raising the objection of no cause of action is to test the legal sufficiency of a pleading by determining whether the law affords a remedy on the facts alleged in the pleading. Ourso v. Wal-Mart Stores, Inc., 2008-0780, pp. 3-4 (La.App. 1 Cir. 11/14/08), 998 So.2d 295, 298, writ denied, 2008-2885 (La.2/6/09), 999 So.2d 785.
Generally, no evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La.Code Civ. P. art. 931. However, as set forth in City Nat. Bank of Baton Rouge v. Brown, 599 So.2d 787, 789 (La.App. 1 Cir.), unit denied, 604 So.2d 999 (La.1992), the jurisprudence recognizes an exception to this rule, which allows the court to consider evidence which is admitted without objection to enlarge the pleadings. Treasure Chest Casino, L.L.C. v. Parish of Jefferson, 96-1010, p. 5 (La.App. 1 Cir. 3/27/97), 691 So.2d 751, 754, writ denied, 97-1066 (La.6/13/97), 695 So.2d 982. Otherwise, the exception is triable on the face of the pleadings, and, for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Ourso, 2008-0780 at 4, 998 So.2d at 298. The court must determine if the law affords plaintiff a remedy under those facts. Stroscher v. Stroscher, 2001-2769, p. 3 (La.App. 1 Cir. 172/14/03), 845 So.2d 518, 523. Any doubts are resolved in favor of the sufficiency of the petition. Id.
An exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief. Thus, dismissal is justified only when the allegations of the petition itself clearly show that the plaintiff does not have a cause of action or when its allegations show the existence of an affirmative defense that appears clearly on the face of the pleadings. Lyons v. Terrebonne Parish Consol. Government, 2010-2258, p. 6 (La.App. 1 Cir. 6/10/11), 68 So.3d 1180, 1183.
The burden of demonstrating that a petition fails to state a cause of action is upon the mover. Foti v. Holliday, 2009-0093, p. 6 (La.10/30/09), 27 So.3d 813, 817. In reviewing a district court’s ruling sustaining an exception of no cause of action, appellate courts conduct a de novo review, because the exception raises a question of law, and the district court’s decision is based only on the sufficiency of the petition. Torbert Land Co., L.L.C. v. Montgomery, 2009-1955, p. 4 (La.App. 1 Cir. 7/9/10), 42 So.3d 1132, 1135, unit denied, 2010-2009 (La.12/17/10), 51 So.3d 16.
As previously discussed, the trial court expressed in its oral reasons for judgment that because it was granting the res judi-cata exception, it found that the no cause of action of exception was moot. Even the parties seemed to believe that the trial court did not rule on the no cause of action exception at the hearing, as both appeal briefs make reference to the trial court’s ruling on the exception as moot. However, in the May 2, 2011 judgment that has been appealed to this court, the trial court actually acted on the no cause of action exception and sustained same. We have reviewed the record before us and, accepting the well-pleaded allegations of fact in Pierrotti’s petition as true, we are satisfied that Pierrotti has stated a valid cause of action to clear the title to the Cloverland property. Accordingly, the trial court’s *1063 ruling on the no cause of action exception must be reversed.

\JtES JUDICATA

Res judicata bars relitigation of a subject matter arising from the same transaction or occurrence of a previous suit. Avenue Plaza, L.L.C. v. Falgoust, 96-0173, p. 4 (La.7/2/96), 676 So.2d 1077, 1079; La. R.S. 13:4281. It promotes judicial efficiency and final resolution of disputes. Terrebonne Fuel & Lube, Inc. v. Placid Refining, Co., 95-0654, 95-0671, p. 12 (La.1/16/96), 666 So.2d 624, 631. Louisiana Revised Statutes 13:4231 provides for res judicata as follows:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
The chief inquiry is whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action. Avenue Plaza, L.L.C., 96-0173 at 6, 676 So.2d at 1080. However, the Louisiana Supreme Court has also emphasized that all of the following elements must be satisfied in order for res judicata to preclude a second action: (1) the first judgment is valid and final; (2) the parties are the same; (3) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (4) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Burguieres v. Pollingue, 2002-1385, p. 8 (La.2/25/03), 843 So.2d 1049, 1053.
The burden of proving the facts essential to sustaining the objection is on the party pleading the objection. Union Planters Bank v. Commercial Capital Holding Corp., 2004-0871, p. 3 (La.App. 1 Cir. 3/24/05), 907 So.2d 129, 130. If any doubt exists as to its application, the exception raising the objection of res judica-ta must be overruled and the second lawsuit maintained. Denkmann Associates v. IP Timberlands Operating Co., Ltd., 96-2209, p. 8 (La.App. 1 Cir. 2/20/98), 710 So.2d 1091, 1096, writ denied, 98-1398 (La.7/2/98), 724 So.2d 738. The concept should be rejected when doubt exists as to whether a plaintiffs substantive rights actually have been previously addressed and finally resolved. Patin v. Patin, 2000-0969, p. 5 (La.App. 1 Cir. 6/22/01), 808 So.2d 673, 676.
When, as here, an objection of res judicata is raised before the case is submitted and evidence is received on the objection, the standard of review on appeal is traditionally manifest error. Leray v. Nissan Motor Corp. in U.S.A., 2005-2051, p. 5 (La.App. 1 Cir. 11/3/06), 950 So.2d 707, 710. However, the res judicata effect of a prior judgment is a question of law that is reviewed de novo. Fogleman v. Meaux *1064 Surface Protection, Inc., 2010-1210, p. 2 (La.App. 3 Cir. 3/9/11), 58 So.3d 1057, 1059, writ denied, 2011-0712 (La.5/27/11), 63 So.3d 995. In the instant case, Pierrotti argues that the standard of review is de novo because, while the exception was raised prior to the case being heard, the trial court did not express any factual findings. To the contrary, Johnson contends that the trial court did make a factual finding that the properties and the obligations were indivisible under the MSA and that the standard of review as to this finding should be manifest error. We have reviewed the trial court’s brief oral reasons for judgment, in particular, the following statement by the trial court: “Accordingly, the Court finds that the properties and the obligations were indivisible under the [MSA] as consistently the two properties in question were referred to together throughout the [MSA].” We agree with Pierrotti that the trial court did not make any factual findings, but rather made a legal conclusion regarding the nature of the property and the obligations as set forth in the MSA. Therefore, we will conduct a de novo review to determine if the trial court was legally correct in sustaining the res judicata exception.
| inPierrotti initially argues on appeal that the exception of res judicata was not properly before the trial court for review because Johnson failed to file a supporting memorandum citing relevant facts and applicable law in accord with Uniform Rules — Louisiana District Courts, Rule 9.9(a). In addition, Pierrotti contends that Johnson was required, as the objecting party, to introduce the entire record of the underlying proceeding in order that the trial court could make a determination as to whether res judicata was appropriate. See Middleton v. Livingston Timber, Inc., 2010-1203, pp. 3-4 (La.App. 1 Cir. 2/11/11), 57 So.3d 590, 592-593. We find no merit to these arguments.
As correctly pointed out by Johnson in brief to this court, there is nothing in Rule 9.9(a) to support Pierrotti’s position that failure to file the required memorandum means the issue was not properly before the trial court. In fact, the only sanction found in Rule 9.9(a) for failure to file a supporting memorandum of law is that the offending party may forfeit the privilege of oral argument. Moreover, while the record is devoid of any memorandums either in support of or in opposition to the res judicata exception, there is nothing in the record to suggest that the trial court did not have sufficient evidence before it at the hearing on the exceptions to decide the issue. In fact, the tidal court started its findings with the following: “The Court has carefully examined all the pleadings, the memorandums, exhibits and the law in connection with these exceptions.... ” Thus, we find no merit to Pierrotti’s argument that the res judicata■ issue was not briefed by the parties and the trial court had insufficient evidence on which to base its ruling.
Next, Pierrotti argues that even if the trial court properly considered the res judicata issue, all the necessary elements of res judicata are not present in this case. Pierrotti contends that “while there may be an identity between the parties, it is not as clear as with the ‘cause’ and there is clearly a different ‘thing’ demanded.” Pi-errotti goes on to allege that although the underlying 2005 arbitration proceeding was predicated on the MSA, it dealt solely with the Nelson property and had nothing to do with the Cloverland property. We find merit to this argument.
In Although it is clear that the underlying arbitration proceeding and the instant claim by Pierrotti both stem from the MSA (i.e., the arbitration proceeding dealt *1065 with an alleged breach of Agreement # 6 that resulted in Johnson’s obligation to transfer his interest in the Nelson property being cancelled, and the instant claim by Pierrotti deals with a cloud in the title following the transfer of the Cloverland property from Johnson to Pierrotti pursuant to Agreement # 6), it is also clear that the arbitration award did not have any effect on the Cloverland property. Rather, the sole focus of the arbitration was the Nelson property. The arbitrator specifically cancelled Johnson’s obligation to transfer his ownership interest in the Nelson property to Pierrotti, stating, “The award is in full settlement of all claims and counterclaims submitted to this arbitration. All claims not expressly granted herein are hereby DENIED.” There are no references to the Cloverland property in the arbitrator’s award. Moreover, there is nothing in the record to suggest that the parties included the Cloverland property in the arbitration proceedings. Upon a thorough review of the record in this case, we find that the facts and circumstances presented do not come within the ambit of res judicata. The issue of the ownership of the Cloverland property or the title thereto was not raised, considered, or decided during the arbitration proceedings below. Thus, the trial court erred in dismissing Pierrotti’s petition based on res judicata.[2]
CONCLUSION
For the above and foregoing reasons, we reverse the May 2, 2011 judgment of the trial court and remand for further proceedings consistent with this opinion. All costs associated with this appeal are assessed against defendants-appellees, Glenn Lee Johnson and Kim Graham Johnson.
REVERSED AND REMANDED.

. We note that the trial court's written judgment does not comport with its oral reasons in that the no cause of action exception was sustained along with the res judicata exception in the written judgment. A trial court’s oral reasons for judgment form no part of the judgment itself, and when there is a conflict between the judgment and the reasons, the judgment controls. See Dean Classic Cars, L.L.C. v. Fidelity Bank and Trust Co., 2007-0935, p. 17 n. 9 (La.App. 1 Cir. 12/21/07), 978 So.2d 393, 402 n. 9. Neither party has raised this discrepancy as an issue on appeal. Nonetheless, pursuant to our authority under La. Code Civ. P. art. 2164 to render any judgment that is just, legal, and proper upon the record on appeal, we will address same.

. Because we find that the trial court erred in sustaining the res judicata exception and reverse the judgment below, we pretermit consideration of the remaining assignments of error raised by Pierrotti on appeal.