PARRO, J.
li>J. Marion Matherne appeals a judgment in favor of TWH Holdings, L.L.C. (TWH), sustaining its peremptory exception raising the objection of res judicata, and dismissing Matherne’s claims alleging an ownership interest in TWH. For the following reasons, we affirm the judgment.
FACTUAL AND PROCEDURAL BACKGROUND
On November 26, 1991, J. Marion Math-erne, the sole shareholder of K-TEK Corporation (K-TEK), entered into a “Management and Control Agreement” (the 1991 Agreement) with Tony W. Harper to accomplish the eventual transfer of Math-erne’s ownership, management, and control of K-TEK to Harper.[1] Under the 1991 Agreement, the transfer was to be finalized at the end of 1996, at which time all payments under the 1991 Agreement would be paid in full, all of Matherne’s shares in K-TEK would be returned to the corporation as treasury shares, and Harper would become the sole owner of K-TEK. Two key provisions of the 1991 Agreement stated the following:
17. Neither of the parties can sell, transfer, assign or [ejncumber their stock in The Corporations [K-TEK and M-TEC/RISE] during the life of this agreement except as herein contemplated or with the written consent of both parties to the contrary. It is also agreed that neither party will vote any stock they have in The Corporations for the purposes of allowing The Corporations to issue any additional shares of stock without the mutual written consent of those parties.
18. At the end of the six year period of time commencing with January 1, 1991 and assuming that all payments due hereunder have been made and all transfers of property have been accomplished and all the other terms and conditions as set forth herein are fully performed, then Matherne will return all of his outstanding stock in M-TEC/RISE and K-TEK to The Corporations without further consideration being paid for *857 same. All of this stock will then become treasury stock in The Corporations.
Paragraph 19 of the 1991 Agreement stated that any disputes or decisions not settled by mutual agreement of the parties would be submitted to binding arbitration.
On December 27, 1996, Matherne and Harper entered into a letter agreement (the 1996 Agreement), which addressed all the remaining issues between them that lswere based on the 1991 Agreement.[2] That letter stated:
2. Upon receiving the payments described in paragraph 1 above, you [Matherne] will return your shares of M-TEC and K-TEK to those corporations for cancellation as treasury shares. At that time I [Harper] will be the sole shareholder of M-TEC and K-TEK.
All the agreed-upon payments under the two agreements were paid, and Matherne surrendered his shares in the two corporations, as required by both agreements.
In late 1997, Matherne asked K-TEK for certain payments that had not been covered by either of the two agreements, including money allegedly owed to him for equipment rental. He also asked for accelerated payment of certain consulting fees that were to be paid to him under the 1996 Agreement. K-TEK refused these requests. In succeeding months, Math-erne continued to assert that various obligations to him from the two agreements had not been resolved, that Harper had breached certain verbal agreements between the parties, and that he (Matherne) was prepared to take legal steps to regain his position and ownership of K-TEK.
In order to resolve these demands, on July 23, 1999, K-TEK, M-TEC/RISE, and Harper filed suit against Matherne in the Twenty-Third Judicial District Court (the 23rd JDC suit or the first suit),[3] seeking a declaratory judgment to determine the rights, status, and other legal relations between the parties, injunctive relief, and damages. Paragraph 10 of the petition in the 23rd JDC suit stated:
Matherne and Rita signed the 1996 Letter Agreement and all payment of the sums contemplated by the 1991 Agreement as amended and supplemented by the 1996 Letter Agreement were made to Matherne. Matherne and Rita then surrendered the remaining shares in K-TEK and M-TEC for redemption and Matherne resigned all offices and positions with the corporations. Math-erne was then engaged as an “as needed” or “at will” consultant to K-TEK and as a[n] “at will” non-officer-manager of M-TEC in satisfaction of the obligation to provide “meaningful employment” to him pursuant to the 1991 Agreement.
Copies of the 1991 Agreement and 1996 Agreement were attached to the petition.
The Mathernes and MPS filed an answer in the 23rd JDC suit on December 3, 1999. Paragraph 10 of their answer stated the following:
|4The allegations of plaintiffs’ petition paragraph no. 10 are admitted in regards to the transfer of shares between the Mathernes and Harper. However, all other allegations of plaintiffs’ petition paragraph no. 10 are denied.
In an amended answer filed March 17, 2000, the Mathernes asserted a reconven-tional demand containing additional claims for monetary payments under the 1991
*858 Agreement that they alleged had not been paid as agreed.
Eventually, all parties to the 23rd JDC suit filed a motion to invoke alternative dispute resolution procedures, seeking arbitration of their remaining disagreements. Paragraph 3 of the motion stated:
The parties, with the advice of counsel and after due and diligent inquiry into relevant facts and applicable law, have identified the following matters as constituting all claims, demands and causes of action between them (hereafter the “disputed matters”) and agree that any claim, demand or cause of action not specifically identified herein shall be deemed forever waived and renounced.
The sole and only disputed matters between the parties concern the following:
1. The obligation, if any, of any party to pay and the right of any party to receive money pursuant to any provision of the agreement between J. Marion Matherne and Tony W. Harper dated on or about November 26, 1991, a copy of which is attached to the petition filed herein as Exhibit “A” (hereafter referred to as the “1991 Management and Control Agreement”) as the same may be determined to have been modified by the letter agreement between J. Marion Matherne, Rita L. Matherne, Tony W. Harper and Natalie Harper dated December 27, 1996 and signed by the Mathernes on January 2, 1997, a copy of which is attached to the petition filed herein as Exhibit “B” (hereafter referred to as the 1996 Letter Agreement); and
2. The claim, if any, of Modern Process Systems, Inc. against K-TEK Corporation for the payment [of] money for fair rental or use of and necessary repairs to certain items of equipment owned by Modern Process Systems, Inc. and used by ... K-TEK Corporation; and
3.The obligation, if any, of any of the Harper Parties to Rita L. Matherne on any unpaid installment promissory note.
There are no other disputed matters between any of the parties of any kind, character or nature, and to the extent the same may exist, such disputed matters are deemed forever waived and renounced. (Emphasis in the original).
The judge in the 23rd JDC suit signed a Consent Order pursuant to the motion regarding arbitration on April 4, 2000.
|BAn arbitration proceeding was held before Vincent P. Fornias, who rendered his decision on May 16, 2000, rejecting all of the Mathernes’ demands and taxing all costs of the proceeding against them. The Harpers moved for a judgment confirming the decision of the arbitrator, and the district court judge entered and signed such a judgment on July 25, 2000. That judgment included certain injunctive relief in favor of the Harpers and K-TEK that had not been at issue in the arbitration, and the Mathernes moved for a new trial to have that injunctive language removed. A new trial was granted, and on September 25, 2000, the judge in the 23rd JDC suit signed a consent judgment that confirmed the decision of the arbitrator and did not include the language concerning injunctive relief. Among other things, that judgment stated:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT:
All other disputed matters relating to or connected with the 1991 Agreement or the 1996 Agreement asserted or as-sertable by any of J. Marion Matherne, Rita L. Matherne or Modern Process Systems, Inc., on the one hand, against or concerning any of Tony W. Harper, *859 Natalie L. Harper, K-TEK Corporation or M-TEC/RISE, Inc., on the other hand, are hereby dismissed with prejudice.
Almost twelve years later, on March 21, 2012, Matherne initiated the current litigation by filing suit in the Nineteenth Judicial District Court (the 19th JDC suit or the second suit) against the successor corporation to K-TEK, TWH. In this suit, Matherne claimed to be the owner of 4000 shares of stock in K-TEK, as evidenced by a stock certificate issued to him on December 6,1996. The petition also alleged that, without Matherne’s knowledge or consent, on December 17, 1999, K-TEK had merged with K-TEK, L.L.C.; that following the merger, K-TEK, L.L.C. was the survivor; and that the name of K-TEK, L.L.C. was changed in 2007 to TWH Holdings, LLC. Matherne claimed an equity interest in TWH and sought to have that recognized or to be bought out. In response to this petition, TWH filed a peremptory exception raising the objection of res judicata and seeking dismissal of Matherne’s claims.
On August 13, 2012, the judge in the 19th JDC suit held a hearing on TWH’s exception, at which the entire record of the 23rd JDC suit was introduced as evidence. Following that hearing, in oral reasons for judgment, the judge stated:
LI understand the case very, very well. A lawsuit was filed. It was filed in the 23rd JDC. The parties are the same in this lawsuit. At issue in that lawsuit was, among other things, ownership of stock and monies due and owing by and between the parties under a 1991 and 1996 agreement.They were put at issue. Specifically put at issue were the transfer of the stocks. The judgment issued by Judge Holdridge on September 25th of 2000 addresses all of the money issues ... but then it adds, it is further ordered, adjudged, and decreed that all other disputed matters relating to or connected with the 1991 Agreement or the 1996 Agreement asserted, that means set forth in the 23rd lawsuit, or assertable claims that could have been made that weren’t yet asserted by any of Marion Matherne, Rita Matherne, or Modern Process Systems, Inc., on the one hand, against or concerning any of Tony Harper, Natalie Harper, K-TEK Corporation or M-TEK/RISE, Inc., on the other hand, are hereby dismissed with prejudice. That means that all matters between the parties, stock issues, as well as money issues, were raised and resolved, either through the pleadings and/or arbitration in Suit Number 65,186, Division C of the 23rd JDC. It was, in fact, a final and valid judgment pursuant to Louisiana R.S. 13:4231, and therefore, res judicata does apply in this matter, and I will grant the exception of res judicata, dismissing the matter with prejudice. I’ll sign an order upon presentation, Sir. Thank you. Costs assessed against Mr. Matherne.
A judgment in accordance with these reasons was signed on August 23, 2012. This appeal followed.
DISCUSSION
Louisiana Revised Statute 13:4231 states the following, in pertinent part, concerning the doctrine of res judicata:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of *860 the litigation are extinguished and merged in the judgment. (Emphasis added).
The amendment of this statute by 1990 Louisiana Acts, No. 521, effective January 1, 1991, made a substantial change in the law. Under its provisions, the central inquiry is not whether a second action is based on the same cause or cause of action (a concept which is difficult to define), but whether a second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action. This serves the purpose of judicial economy and fairness by requiring the plaintiff to seek all relief and to assert all rights which arise out of the same transaction [7or occurrence. For purposes of res judicata, it would not matter whether the cause of action asserted in a second action was the same as that asserted in the first or was different, as long as it arose out of the transaction or occurrence that was the subject matter of the first action. LSA-R.S. 13:4231, Comments-1990, Comment (a).
Under LSA-R.S. 13:4231, all of the following elements must be satisfied for res judicata to preclude a second action: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Burguieres v. Pollingue, 02-1385 (La.2/25/03), 843 So.2d 1049, 1053.
A judgment determining the merits of a case, in whole or in part, is a final judgment. LSA-C.C.P. art. 1841; see also Tolis v. Board of Sup’rs of Louisiana State Univ., 95-1529 (La.10/16/95), 660 So.2d 1206, A final judgment acquires the authority of the thing adjudged if no further review is sought within the time fixed by law. Tolis, 660 So.2d at 1206. A confirmed arbitration award is considered to be a valid and final judgment for purposes of res judicata. See In re Interdiction of Wright, 10-1826 (La.10/25/11), 75 So.3d 893, 897-98.
There is no requirement that the claims be actually litigated for the doctrine of res judicata to apply. Leon v. Moore, 98-1792 (La.App. 1st Cir.4/1/99), 731 So.2d 502, 505, writ denied, 99-1294 (La.7/2/99), 747 So.2d 20. Also, although not explicitly stated in the amended statute, the requirement that the parties be “the same” in order for a second suit to be precluded by operation of res judicata retains an “identity of capacity” component that was recognized under the former law. That is, under LSA-R.S. 13:4231, the parties are the same when they appear in the same capacities in both suits. Burguieres, 843 So.2d at 1054-55, Thus, the jurisprudence does not require that the parties in the two lawsuits be physically identical, as long as they share the same “quality” as parties. Code v. Department of Pub. Safety and Corr., 11-1282 (La.App. List Cir.10/24/12), 103 So.3d 1118, 1125, unit denied, 12-2516 (La.1/23/13), 105 So.3d 59.
The doctrine of res judicata is not discretionary and mandates the effect to be given final judgments. Diamond B Const. Co., Inc. v. Department of Transp. and Dev., 02-0573 (La.App. 1st Cir.2/14/03), 845 So.2d 429, 435. The burden of proving the facts essential to sustaining the objection is on the party pleading the objection. Union Planters Bank v. Commercial Capital Holding Corp., 04-0871 (La.App. 1st Cir.3/24/05), 907 So.2d 129, 130. If any doubt exists as to its application, the exception raising the objection of res judicata must be overruled *861 and the second lawsuit maintained. Denkmann Assoc. v. IP Timberlands Operating Co., Ltd., 96-2209 (La.App. 1st Cir.2/20/98), 710 So.2d 1091, 1096, writ denied, 98-1398 (La.7/2/98), 724 So.2d 738. The res judicata effect of a prior judgment is a question of law that is reviewed de novo. Pierrotti v. Johnson, 11-1317 (La. App. 1st Cir.3/19/12), 91 So.3d 1056, 1063-64.
Applying these principles to the matter before us, we note that the first two requirements of the statute, the existence of a valid and final judgment, are met. For purposes of res judicata, a valid judgment is one rendered by a court with jurisdiction over both the subject matter and the parties after proper notice has been given. A final judgment is one that disposes of the merits in whole or in part. The use of the phrase “final judgment” also means that the preclusive effect of a judgment attaches once a final judgment has been signed by the trial court and bars any action filed later unless the judgment is reversed on appeal. LSA-R.S. 13:4231, Comments-1990, Comment (d); see also Burguieres, 843 So.2d at 1053. In the matter before us, the judgment in the first suit was rendered in the 23rd JDC, a court with subject matter jurisdiction and personal jurisdiction over the parties. It confirmed the decision of an arbitrator, which is considered to be a valid and final judgment for purposes of res judicata. The judgment in the first suit was rendered after notice to the parties, disposed of the merits of the suit, and was not appealed. Therefore, it was a valid and final judgment, |3which met the first two requirements of LSA-R.S. 13:4231.
With reference to the identity of the parties, the first suit was filed by K-TEK, M-TEC, and Harper against Math-erne, his wife, Rita, and MPS. The second action was filed by Matherne against TWH, the successor corporation to K-TEK. Identity of parties is satisfied when a privy of one of the parties is involved. Burguieres, 843 So.2d at 1054 n. 3. In its broadest sense, “privity” is the mutual or successive relationship to the same right of property, or such an identification in interest of one person with another as to represent the same legal right. Five N Co., L.L.C. v. Stewart, 02-0181 (La.App. 1st Cir.7/2/03), 850 So.2d 51, 61. Matherne was a party to both suits. TWH, a party in the second suit, was the successor corporation to K-TEC, a party in the first suit. Therefore, the third requirement of LSA-R.S. 13:4231 is met, and a valid and final judgment in the first suit has res judicata effect.
The fourth requirement of LSA-R.S. 13:4231 is that the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation. The claim asserted by Matherne in the second suit was that he had an ownership interest in TWH, based on an alleged ownership interest in K-TEC that was evidenced by a certificate dated December 6, 1996, showing him as the owner of 4000 shares of K-TEC stock.[4] The first suit was filed in July 1999 and the final judgment was signed in September 2000. One of the issues in that suit *862 involved the ownership of K-TEC and the transfer of that ownership interest from Matherne to Harper in 1996. Therefore, Matherne’s claim of ownership in K-TEC as of 1996 existed at the time of the final judgment in the first suit. Thus, the fourth requirement of LSA-R.S. 13:4231 is satisfied.
The fifth requirement of LSA-R.S. 13:4231 is that the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the | ^subject matter of the first litigation. The subject matter of the first litigation was Matherne’s ownership of K-TEK and the transfer of that ownership to Harper upon satisfaction of obligations set forth in two agreements between the parties, the 1991 Agreement and the 1996 Agreement. The cause of action asserted by Matherne in the second suit is that he had an ownership interest in TWH as a result of an ownership interest in K-TEK. He sought to have that interest recognized by issuance of an appropriate stock/membership certificate in TWH or, in the alternative, to have his interest valued as of the time of the merger of K-TEK into K-TEK, L.L.C., and to have payment to him from TWH of cash or property equivalent to that value. Thus, the cause of action asserted in the second suit — ownership of K-TEK in 1996 resulting in ownership of TWH — arose out of the transaction or occurrence — transfer of K-TEK ownership to Harper in 1996 — that was the subject matter involved in the first suit. Therefore, all five requirements for the application of res judicata set out in LSA-R.S. 13:4231 were satisfied in this case.
Moreover, although there is no requirement that the claims in the second suit were actually litigated in the first suit for the doctrine of res judicata to apply, we agree with the trial court that those claims were litigated in the first suit and were resolved by the September 25, 2000 judgment, which confirmed the decision of the arbitrator. K-TEK’s petition in the first suit asserted that all of the payments required by the 1991 Agreement, as amended by the 1996 Agreement, had been made; that Matherne had surrendered his remaining shares in K-TEC to the corporation as treasury shares; and that Harper was now the sole owner of K-TEK. In his answer, Matherne admitted the allegations of the petition “in regards to the transfer of shares between the Mathernes and Harper.” Therefore, the transfer of Matherne’s K-TEC shares to Harper was no longer an issue in the litigation, having been resolved by Math-erne’s admission of that fact. The remaining issues concerned the satisfaction of the obligations in the 1991 and 1996 Agreements, as well as the existence and enforceability of certain alleged oral agreements; these were submitted to arbitration. In their motion to invoke arbitration, |nboth parties agreed that there were no other disputed matters between them of any kind, character, or nature, and, to the extent the same may exist, such disputed matters were deemed forever waived and renounced.
The judgment rendered by the trial court in the first suit confirmed the decision of the arbitrator in favor of plaintiff K-TEK, which decision had rejected and dismissed all of Matherne’s claims against it on the issues submitted to arbitration. As previously noted, that judgment further stated:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT:
All other disputed matters relating to or connected with the 1991 Agreement or the 1996 Agreement asserted or as-sertable by any of J. Marion Matherne, Rita L. Matherne or Modern Process Systems, Inc., on the one hand, against *863 or concerning any of Tony W. Harper, Natalie L. Harper, K-TEK Corporation or M-TEC/RISE, Inc., on the other hand, are hereby dismissed with prejudice. (Emphasis added).
By dismissing all disputed matters “asserted or assertable” between Matherne and K-TEK related to or connected with the 1991 Agreement or the 1996 Agreement, the court recognized and exercised the claim preclusion function of res judicata, as set out in LSA-R.S. 13:4231. That function extinguishes all causes of action existing at the time of final judgment in the first suit, whether asserted or not, as long as those causes of action arose out of the transaction or occurrence that was the subject matter of the litigation. In this judgment in the first suit, the trial court also implicitly recognized and enforced the waiver and renunciation of any and all claims that either party may have against each other, which was a condition of their agreement to arbitrate their disputes.
In the second suit, which is before us in this appeal, the trial court recognized that all matters between the parties, including stock issues and money issues, had been raised and resolved, either through the pleadings and/or arbitration, in the first suit. The court further noted that the judgment rendered in that suit was a final and valid judgment pursuant to LSA-R.S. 13:4231, and that therefore, res judicata applied to the claims raised in the second suit. Based on our de novo review of the record, we agree with the judgment of the trial court, which sustained the exception raising the objection of res judicata and dismissed all of Matherne’s claims, with prejudice.
| ^CONCLUSION
For the above reasons, the August 23, 2012 judgment of the trial court is affirmed. All costs of this appeal are assessed to J. Marion Matherne.
AFFIRMED.

. The 1991 Agreement also provided for the transfer of ownership, management, and control of another corporation, M-TEC/RISE, Inc., under the same conditions. That transfer is not at issue in this appeal.

. Matherne and his wife, Rita, signed the 1996 agreement on January 2, 1997.

. The 23rd JDC suit also named as defendants Matherne’s wife, Rita, and Modern Process Systems (MPS), another corporation owned by the Mathernes.

. This certificate was signed on December 6, 1996, by J. Marion Matherne, as President of K-TEK, and Rita L. Matherne, as Vice President and Acting Secretary of K-TEK. Other documents in the record show that Rita was not authorized to sign as Secretary or Acting Secretary at this time and that the corporation had not voted to authorize the issuance of additional shares to Matherne at that time. Moreover, such issuance was an apparent breach of paragraph 17 of the 1991 Agreement, since there was no mutual written consent by Matherne and Harper to such issuance.