SUSAN E. BYRNES ET AL. v. GEO. W. SAMPSON.

No. 6131.

1. **Unknown Heirs—Citation—Statute Construed.**—The statute passed in 1866 (Pasch. Dig., art. 5460) authorizing the citation of unknown heirs by publication was not repealed by the "Public Printing Law" of August 13, 1870.

2. **Constructive Repeal.**—The Act "To Regulate Public Printing" does not in-·clude in its caption any subject interfering with or controlling proceedings in the District Court, and if intended to have such effect, which does not appear, it would not ·be within the subject of the caption.

3. **Service of Citation by Publication.**—In suits of this character, where ser-

vice must be had by publication, there must be a strict compliance with the statute regulating such proceedings.

4. **Suits Against Unknown Heirs.**—It does not appear that the Act of 1866 (Pasch. Dig., art. 5460) required that in suits against unknown heirs the court should appoint an attorney to represent the unknown defendants.

5. **Statement of Facts.**—It seems that a statement of the facts upon which the judgment was based should be incorporated in the record.

6. **Locative Interest—Contract.**—The locator of a land certificate can not acquire an interest in the land so located without a contract for such interest with the owner of the certificate. To authorize a decree for such locative interest against the owner of the certificate it is necessary to show a contract, and that it was complied with.

7. **Fact Case.**—See facts held insufficient to prove a contract for a locative interest, or a compliance with it by the alleged locator.

ERROR from Karnes. Tried below before Hon. H. Clay Pleasants.

This suit was begun in the District Court of Karnes County on July 8, 1876, by G. W. Sampson as surviving partner of the firm of Sampson & Hendricks against Robert Creuzbaur and the unknown heirs of Isaac Ticknor, deceased, alleging title in said firm to 694 acres, an undivided interest in a survey of 3129 acres of land in Karnes County granted to the heirs of Isaac Ticknor; that said Creuzbaur owned 347⅔ acres, and the unknown heirs of Isaac Ticknor the remainder; that Creuzbaur resided in the State of New York, and that the names and residence of the heirs of Isaac Ticknor were unknown.

Plaintiff prayed for partition of the land and general relief. He also prayed for and obtained citation by publication.

At the September Term, 1877, of said court judgment by default was rendered against defendants, granting partition and appointing commissioners, who reported a partition which was confirmed, and judgment was rendered against each party for costs in proportion to his part of the land.

On November 26, 1886, Susan E. Byrne and Louisa T. Parker, joined by their husbands, filed in the District Court of Karnes County their petition and bond for writ of error, showing in their petition, which is sworn to, that they are and were at the rendition of the judgment in said cause and at all times since have been married women, non-residents of this State, and heirs at law of Isaac Ticknor, deceased; and on the next day sued out citation in error against all the other parties to the suit except Mrs. Taliaferro who waived service, which citations were duly served.

*Swan & Bomar*, for plaintiffs in error. — 1. The court erred in allowing judgment to be rendered against the unknown heirs of Isaac Ticknor, because said judgment appears to have been rendered without the court having jurisdiction so to do, in this, that at the time of the rendition of said judgment there was no law in existence authorizing suit against unknown heirs. 1 Pasch. Dig., arts. 25, 26; 2 Pasch. Dig., art. 5460; Act

Nov. 9, 1866, p. 125; Act Aug. 13, 1870, p. 70; 2 Pasch. Dig., arts. 7009, 7010, note 1229h; 2 Pasch. Dig., p. 1139; Act Nov. 20, 1871, p. 31; 2 Pasch. Dig., art. 7337; 1 Pasch. Dig., arts. 45–77; Act March 15, 1875, p. 170; Rev. Stats., arts. 1235, 1236.

2.   The testimony embodied in the judgment in said cause as a statement of facts fails to establish any claim whatever against the heirs of Isaac Ticknor, which is necessary to confer jurisdiction on the court.

3.   The record fails to show that an attorney was appointed to represent the unknown heirs of Isaac Ticknor, but on the other hand affirmatively shows that no such attorney was appointed as provided and required by law.   Act Nov. 9, 1866, p. 125; 2 Pasch. Dig., art. 5460.

4.   During the years 1876 and 1877 there was no law in this State authorizing suits or judgments against unknown persons and certainly not *in personam.*   Rorer on Jud. Sale, 2 ed., 913, 927; Freem. on Jud., 141; Bailey v. Morgan, 13 Texas, 342; Ousley v. Ex. Bank, 1 Texas, 95; Webster v. Reed, 11 How., 437.

*Osceola Archer,* for defendant in error.

HOBBY, JUDGE.—The grounds upon which the plaintiffs in error rely for a reversal are that there was no law in force in this State at the time of the institution of this suit or the rendition of the judgment authorizing service by publication upon unknown heirs; that if such mode of service was contemplated or provided for by statute at that time it was not properly complied with in this case; that the facts embodied in the judgment fail to show any claim against the plaintiffs in error, the heirs of Isaac Ticknor, deceased; that the record affirmatively shows that no attorney was appointed to represent the unknown heirs of said Ticknor, deceased.

If it shall be found upon an examination of the statutes regulating the character of service by publication which was obtained upon plaintiffs in error that no law was then in force authorizing such service, the necessary result would be a reversal of the judgment and dismissal of the cause.   Should it be ascertained otherwise from such examination, the next inquiry would be whether for other errors assigned the judgment should be reversed and the cause remanded.

Considering the questions indicated in the order just mentioned, some reference will be necessary to the different statutes making provision for service by publication, passed in 1848, and the acts supplemental to or amendatory thereof since that time.

The Act of March 16, 1848, "concerning proceedings in the District Court" (Pasch. Dig., arts. 25 and 26), prescribed the manner of service by publication in two classes of cases, article 25 providing for such service on a defendant who was not a resident of the State, or who was absent, or

a transient person, or whose residence was unknown. This article evidently contemplated defendants whose *names were known* or recognized *as parties* to the suit but whose residence was unknown, or who were absent, or non-residents, or transient persons.

Article 26 provided for such service upon that class of persons who were the heirs of a deceased person a *party* to the suit, and whose *names* were unknown. So the law remained upon this subject until November, 1866, when article 26 was enlarged in an important respect by an amendatory act which in substance provided that where any person having a claim to property as against the heirs of a deceased person, and their *names* were unknown, upon proper affidavit of that fact service by publication could be obtained on such heirs in a suit in which such claim was litigated. Laws 1866, p. 125; Pasch. Dig., art. 5460.

The law of 1848, article 26, limited the service by publication on unknown heirs to suits where their ancestors were parties. The law of 1866 authorized it on heirs whose names and residence were unknown, without regard to the fact whether the ancestor was a party to the suit or not.

This latter act required the publication of citation for eight weeks previous to the return day of the process in some newspaper published in the county where the writ issued, if there be one, if not then in the nearest county where a newspaper was published.

The plaintiffs in error in this case contend that the statute of 1866 (Pasch. Dig., art. 5460), which superseded the law of 1848 (Pasch. Dig., art. 26), was repealed by the Act of August 13, 1870 (Laws 1870, p. 170), known as the Public Printing Law, in so far as the law of 1866 prescribed the mode of service by publication; and that the act regulating the public printing having been repealed by the Act of November 24, 1871 (Gen. Laws 1871, p. 31), there was no law in force in this State authorizing such service on heirs whose names and residence were unknown from 1871 until the adoption of the Revised Statutes, September 1, 1879 (art. 1236, Rev. Stats.); that therefore the court was without jurisdiction, this suit having been brought in July, 1876, and the judgment rendered in September, 1877.

The position of the defendant in error is in effect that if the law of 1866 was repealed by the public printing act referred to, the law in force authorizing the service by publication in this suit was that of March 15, 1875 (Gen. Laws, 1875, p. 170), "prescribing the mode of service in certain cases."

In neither of these propositions do we concur. That part of the law of 1870, known as the Public Printing Law, which it is urged repeals the law of 1866, is section 13, which empowered the Governor to designate certain journals to publish the county and judiciary printing and advertising of the respective judicial districts. Each paper so selected was to

be the official journal of the district, and requiring all judicial advertising to be done in said journal.

This section further provided in substance that all publications in any other paper should be null and void after notice of such selection by the Governor was given to the judge, clerks, and sheriffs of the respective districts. This public printing statute contained a clause repealing all laws in conflict therewith.

We do not think a reasonable construction of the section mentioned would have the effect to repeal the law of 1866. The subject matter legislated upon by and the object expressed in the captions of these statutes were wholly distinct from and had no relation to or connection with each other. The law of 1866, an important act, afforded facilities for the assertion of valuable rights, regulating proceedings in our courts of most extensive jurisdiction, was amendatory of the Act of March, 1848, "concerning proceedings in the District Courts" (Pasch. Dig., art. 26), which had for eighteen years previously provided for a mode of procedure in actions against unknown heirs of deceased persons who had been parties to the suit. The Act of 1866 removed the limitation in the Act of 1848 requiring the ancestor to have been a party to the suit, as before explained.

The law of 1870, "to regulate public printing," which it is said repealed this act, had no reference whatever to proceedings in the District Court, nor is there anything in its language from which it can be fairly presumed that it was the intention in its passage to repeal a law regulating proceedings in the District Court in a large class of cases and which had been in force since in March, 1848. · The law of 1870 makes no reference to the subject matter of the Act of 1866. As indicated by its caption it regulated exclusively and with minuteness of detail the public printing. Whatever conflict may appear between the language used in section 13 of the Public Printing Law and the mode of service prescribed by the law of 1866, we do not think it is sufficient to authorize the conclusion that it was the intention or that it operated to repeal the latter statute. Should it be susceptible of such a construction it could not have that effect, because there was only one object embraced in the caption ("An Act to Regulate the Public Printing"), and a repeal of the Act of 1866 "concerning proceedings in the District Court" would have been a different object and would have been in violation of article 12, section 17, Constitution of 1869. The law of 1866 was recognized as being in force and unrepealed by the Act of 1870 in the case of Love v. Henderson, 42 Texas, 522. Though this question was not directly raised we have thought it proper to say this much upon this subject, as the question is raised by the assignments of error and views adverse to those we have here expressed are contained in note 1229h to article 5460, volume Paschal's Digest. We conclude therefore that the law of 1866 was in

force at the time of the institution of this suit in 1876 and the rendition of the judgment in this case in September, 1877.

It is urged by the defendant in error that the Act of March 15, 1875 (Laws 1875, p. 170), "An Act prescribing the mode of service in certain cases," was in force when this suit was brought and controlled *all* suits in which service by publication was had. We do not understand this act to apply to suits of the class under consideration. It refers to the class of suits mentioned in Paschal's Digest, article 25. That is to say, to *known* or *named* defendants to the suit where residence is unknown, or who are transient persons or non-residents.

What effect this law of 1875 had upon article 25, Paschal's Digest, does not arise in this case, and as was said in Hewitt v. Thomas, 46 Texas, 235, referring to the same act, "it is not necessary to be decided" in this cause.

The next question is, whether the law prescribing the mode of service by publication has in this case been complied with.

That in suits of this character, where the service is by publication, there must be a strict compliance with every essential requirement of the statute has been repeatedly decided in this State. Allen v. Wyser, 29 Texas, 153; Edrington v. Allsbrooks, 21 Texas, 188; Doty v. Moore, 16 Texas, 592; Hill v. Faison, 27 Texas, 431.

One of the requirements prescribed by the law of 1866 was that "if no appearance was entered within the time allowed for pleading the court shall appoint an attorney to defend in behalf of the heirs," etc.

In the present case no such appointment was made.

At the time of the rendition of this judgment the law provided "that in suits where service of process was made by publication and heard ex parte the court shall make out and incorporate with the records of the case a statement of the facts proven on which the judgment was founded." Pasch. Dig., art. 1488.

Giving to this language a literal construction it would seem to apply only to the class of cases provided for by article 25, Paschal's Digest, where the service was by publication and the hearing ex parte, and not to those mentioned in the Act of 1866 (2 Pasch. Dig., art. 5460), where the court was required to appoint an attorney *ad litem* to represent the unknown heirs cited who had not appeared, as in case of such appointment it might not be regarded strictly as an ex parte hearing. But we think the safer rule and the reason of the law requiring the incorporation of the facts in the decree where service is by publication applies equally in both cases.

Although the heirs may be represented by an attorney appointed by the court, unless provision be made for an authentic preservation of the facts proven upon which the decree is founded the protection afforded the heirs by writ of error would be slight. The law of 1866 does not ex-

pressly require this to be done. But it is required by article 1488, Paschal's Digest, in cases where the service is by publication and the hearing ex parte, and that article applies to suits like the present.

The object manifestly of requiring the facts to be embodied in the decree is that upon a review by petition therefor by the heirs it may be determined whether the judgment was authorized by the facts established on the trial.

In this case the land sued for is described as "694 acres, an undivided interest in 3129 acres patented to the heirs of Isaac Ticknor."

The only evidence as to the land is the deposition of T. H. Duval "that he once had in his possession a bounty land certificate issued by the Adjutant-General of Texas to the heirs of Isaac Ticknor for 1920 acres; that he and I. H. Webb, now deceased, obtained it as attorneys for said heirs; that he placed it in the hands of Walter Boothe and John Duval for location, who agreed to locate it for the usual fee, one-third of the land." This, together with the patent dated September 1, 1855, to the heirs of Isaac Ticknor, deceased, for the land described in the petition, and the deed from Boothe and Duval to plaintiff for 694 acres, constitute the facts upon which the decree was founded.

The facts referred to obviously are insufficient to support a decree divesting the title to the land out of the heirs, for the reason that it fails to show that the heirs of Isaac Ticknor made any contract or authorized or ratified any contract by the terms of which they agreed to convey a locative interest of any part of the land. Duval does not state that he had any such authority. In fact, he does not state that W. M. Boothe and J. C. Duval ever located and obtained patent. His evidence leaves this vital issue in too much doubt to justify a judgment divesting title out of plaintiffs in error upon the theory that they had made such a contract. The heirs holding a perfect legal title ought not to be divested of it upon the ground of having made a locative contract without satisfactory proof of that fact. So far from being satisfactory, it tends to establish a doubt at least. He says "he had no reason to doubt that they would allow the contract."

This doubt which his evidence creates as to their ratification of the contract, taken in connection with the fact that he shows no authority from them to make it previously given, and the further fact that he does not show that the locators complied with any contract if one had been made, is not sufficient to support a decree for the land in favor of plaintiff below.

It is unnecessary to notice any other errors assigned, as it is believed that the important questions in the case have been considered. It may however be proper to add that the objection that there is no publisher's affidavit showing the length of time the citation was published is not well founded. The Act of 1866 (Pasch. Dig., art. 5640), above referred to,

does not require it. That requirement applies under the " Act to pro-- vide for service in certain cases," of March 15, 1875 (Gen. Laws 1875, p. 170), to the class of cases mentioned in article 25, Paschal's Digest.

For the errors mentioned we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted May 21, 1889.