**FISHER et al. v. JORDAN et al. (two cases).**

No. 9554.

Circuit Court of Appeals, Fifth Circuit.

Dec. 18, 1940.

Writ of Certiorari Denied Mar. 3, 1941.

See 61 S.Ct. 734, 85 L.Ed. ——.

184

Frank Stubbeman, of Midland, Tex., and Warren Scarborough, of Fort Worth, Tex., for appellants.

W. W. Campbell and J. E. Vickers, both of Lubbock, Tex., and Lawrence L. Barber, of Seagraves, Tex., for appellees.

Before FOSTER and SIBLEY, Circuit Judges, and DAWKINS, District Judge.

SIBLEY, Circuit Judge.

This record on appeal covers two suits between the same parties to establish and quiet title to a tract of 120 acres and one of 200 acres of land in Yoakum County, Texas. The tracts adjoin and prior to 1912 belonged to H. C. Jordan and his wife Ethel Hall Jordan in community. The 200 acre tract was occupied by the family as a homestead. It appears that Jordan in October, 1912, abandoned his wife and three little children and left the State, returning in 1921 for three years but being again absent until 1931. On his first disappearance one W. E. Head sued him in Scurry County, as his residence, on a note, alleging that his whereabouts is unknown and cannot be ascertained, that he secretes himself and cannot be served, that he had fled the country, and is disposing of his property with intent to defraud his creditors. An attachment was sued out and on November 21, 1912, was levied on the 120 acre tract, and the attachment and levy were entered on the proper record in Yoakum County and returned to the court in Scurry County. A service by publication was attempted. The proceedings resulted in a judgment and execution against the attached land, and a sheriff's sale of it. The land passed through several hands, coming in July, 1927, to Mrs. Jordan, who shortly afterwards sold it for value to appellant Fisher.

Mrs. Jordan in December, 1915, sued Jordan for a divorce and for a provision out of the 200 acres for a support for herself and the three children, then aged seven, five and three years. The service was by publication. The divorce was granted and the land was "decreed to be the property of the plaintiff as a homestead, and divested out of H. C. Jordan * * * and that the plaintiff be quieted in her title in and to said premises." In November, 1927, in Yoakum County, Mrs. Jordan (under her maiden name of Hall) sued Jordan, as a person whose residence was unknown, in the first count in trespass to try title to the 200 acre tract, making only the statutory allegations, but in the second count she set forth her title as peaceable, adverse possession under fence since September 19, 1916, held under a written memorandum of title registered in Book 12, page 204 of Deed records of Yoakum County, and prayed that she be decreed to be the owner in fee simple and that her title be quieted and Jordan's claims be removed as a cloud. Service was by publication. A practicing attorney was appointed by the court to represent the absent defendant as the Texas law re-

quires, and he demurred to and made denial of both counts. On June 5, 1928, after a trial a judgment was made that the plaintiff "do have and recover from the defendant, H. C. Jordan, the land and premises described as follows, etc." Mrs. Jordan deeded this land to appellant Fisher for value in February, 1931. The other appellants hold interests under Fisher. The appellee Walker holds an interest under the appellee Jordan.

The district court, a jury having been waived, held the sheriff's sale of the 120 acres invalid since the judgment in the attchment suit was void because of a defect in the affidavit on which publication for service was had. It also held that the divorce decree did not divest Jordan's title to a half interest in the 200 acre tract, and that the judgment recovering it in 1927 was also void, because the writing, which was the foundation of the limitation title pleaded, was this divorce judgment which was itself void. Decrees were entered the details of which are not important.

The questions for decision are on the validity of each of the three judgments, a different attack being made on each.

1. *The Attachment Judgment.* The regularity of the proceedings is questioned on one point only, that the affidavit to obtain service by publication does not conform to the statute.

A general statute Revised Civil Statutes, Art. 2039, not specially relating to attachments, provides: "Where a party to a suit, his agent or attorney, shall make oath when the suit is instituted, or at any time during its progress, that any party defendant therein is a non-resident of the State, or that he is absent from the State, or that he is a transient person, or that his residence is unknown to affiant, the clerk shall issue a citation for such defendant", to be published once a week for four consecutive weeks. The attorney's affidavit stated that "he had made diligent enquiry concerning the whereabouts of the defendant H. C. Jordan * * * and the whereabouts of said defendant by the use of reasonable diligence cannot be ascertained." The clerk issued a citation which stated that "defendant's residence is unknown and after reasonable diligence cannot be ascertained", and this citation was published. The judgment recites the absence of Jordan and the appointment of a named attorney ad litem to represent him, the hearing of the pleadings and evidence and the argument of counsel, whereupon "the court finds the following facts, to-wit: That all parties[1] are duly and legally cited therein to appear and answer plaintiff's petition * * *."

It thus appears that the clerk thought and the judge decided that "whereabouts" was the equivalent of "residence." Right or wrong, no substantial injury was done Jordan. He was in fact outside the State and not servable personally, and his residence there was unknown. The object of the published citation was to give him notice, and the citation as issued and published was exactly what the statute prescribed and what it would have been if the affidavit had used the correct word. We are aware that statutes authorizing proceedings without personal service are in derogation of common law and must be strictly followed and that it has been held by the Texas Supreme Court that in an attachment case not only must the property be seized, but also there must be service, personal or by publication, on the defendant, such service being jurisdictional. Stuart v. Anderson, 70 Tex. 588, 8 S.W. 295. In the cited case a wholly new cause of action was introduced by amendment and as to it there was no effort at all to make service, the attachment being also held to relate only to the original demand. We remember too that a Texas Court of Civil Appeals has held that in a service by publication "whereabouts" is not the equivalent of "residence". Young v. Young, 127 S.W. 898. That holding was made in a divorce case on a direct review, and not by collateral attack, and the Court's jurisdiction rested wholly on the service by publication, there being no seizure of property. On the other hand on a collateral attack upon a sale under judgment in attachment, as here, where the affidavit said "whereabouts" when the statute said "residence", it has been held there was a mere irregularity, and not a lack of jurisdiction such as to avoid the judgment. Hogue v. Corbit, 156 Ill. 540, 41 N.E. 219, 47 Am.St. Rep. 232. In the present case "whereabouts" was a really appropriate and ex-

---

[1] Jordan's father was sued as indorser with Jordan, and was personally served and appeared.

pressive term. The petition had stated that Jordan's residence was in Scurry County. His domicile was still in Scurry County, for his family still resided there. But in attachment statutes residence does not usually mean domicile, but looks to the actual presence of the defendant. 7 C.J.S., Attachment, § 32, p. 217; 4 Am.Jur., Attachment, § 427. "Whereabouts", when spoken of a fugitive, is pretty well what is meant. Such a defect or irregularity as appears here ought not to avail on a collateral attack, after more than twenty-five years, to upset a title held by third-party purchasers. The land was validly seized, and no judgment sought or obtained except against it. Jordan's father was a party to the suit, and Jordan had left him in charge of his lands. Jordan admits he had actual notice of the judgment and sale on his return a few years later. His note was paid by that sale. That an irregularity in citation, where there is a valid seizure of property and no personal judgment sought, ought not to prevail on a collateral attack, is well established by the reasoning and authority of Cooper v. Reynolds, 10 Wall. 308, 77 U.S. 308, 19 L.Ed. 931; Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565; Stephenson v. Kirtley, 269 U.S. 163, 46 S.Ct. 50, 70 L.Ed. 213. The sheriff's sale was valid.

■ 2. *The Divorce Decree.* The jurisdiction rested wholly on the service by publication, which was regular. The only complaint about the procedure is that no statement of the evidence, approved and signed by the judge, as required by Art. 2158, Revised Civil Statutes of Texas, can now be found. There is no direct proof that none was ever filed. But if the judge failed to make it, while on a direct review there should have been a reversal, for the purpose of it is to assist the absent defendant if he appears after trial and appeals, Byrnes v. Sampson, 74 Tex. 79, 85, 11 S.W. 1073; Garvey v. State, Tex.Civ. App., 88 S.W. 873; yet the judgment is not void on collateral attack; 25 Texas Jurisprudence, p. 412; McLane v. Kirby & Smith, 54 Tex.Civ.App. 113, 116 S.W. 118; Abramson v. Sullivan, Tex.Civ.App., 103 S. W.2d 229; Buse v. Bartlett, 1 Tex.Civ.App. 335, 21 S.W. 52.

■ But it is urged that the decree is void on its face, because it undertakes to divest Jordan of his title to a one-half interest in community land, contrary to Article 4638, Revised Civil Statutes Texas:

"The court pronouncing a decree of divorce shall also decree and order a division of the estate of the parties in such a way as the court shall deem just and right, having due regard to the rights of each party and their children, if any. Nothing herein shall be construed to compel either party to divest himself or herself of the title to real estate." The Texas cases indicate that a very broad discretion is given the court in appropriating the property to the support of the children, and Jordan's abandonment of his wife and three children, the youngest a mere infant, would justify the utmost stretch. In the early case of Fitts v. Fitts, 14 Tex. 443, the community property was indicated as the primary fund to subject to the support and education of children; but in a later case, Hedtke v. Hedtke, 112 Tex. 404, 248 S.W. 21, 23, it was said, "The court pronouncing a decree of divorce is invested with wide discretion in disposing of any and all property of the parties, separate or community, and * * * its action * * * should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair." But in a very recent case before a Court of Civil Appeals, Reasonover v. Reasonover, 59 S.W.2d 887, it was said that the court could decree the use of the homestead or even a life estate in it, but had no power to divest the husband of his title to it. The use only for the minority of the children was decreed in Sykes v. Speer and Goodnight, Tex.Civ.App., 112 S.W. 422, Speer & Goodnight v. Sykes, 102 Tex. 451, 119 S.W. 86, 132 Am.St.Rep. 896. But in Askew v. Rountree, Tex.Civ. App., 120 S.W.2d 117, the court did divest the husband of his title in community land for the support of the wife and child, and on collateral attack the judgment was upheld on the theory that the husband may not have been compelled to give up his title but may have consented. In Bird v. Palmetto Lumber Co., Tex.Civ.App., 176 S.W. 610, the facts were much like the present case, and the court after eighteen years refused to upset the title of a good-faith purchaser, saying the court had jurisdiction, and no error or irregularity in its exercise would render the judgment wholly void. We think the last sentence of the quoted statute is not so framed as to limit the court's jurisdiction, but was intended to guide the court by prescribing a rule of decision. Failure rightly to understand or

apply the rule is error, but if acquiesced in, is not fatal to the judgment.

■ 3. *The Judgment of 1928.* Jordan was again absent from the State, and was regularly served by publication. An attorney ad litem was appointed who defended the case. Jordan knew of this suit in 1931, but did nothing to review it. The contention is that the first count, a trespass to try title with only the general statutory allegations, is not a good pleading to support a judgment against an absent defendant, because contrary to Art. 1977, Revised Civil Statutes of Texas, which prescribes: "The pleadings in such case shall set forth the title of the complainant." Whether a failure to do this would be mere error or would avoid the judgment, we need not decide, because the second count does set forth the title and the judgment may be rested on it. The title there set forth is, in brief, that plaintiff "has had peaceable and adverse possession of the above land and· premises continuously since September 19, 1916, as against said defendant and as against the world, and same is held under a written memorandum of title which fixes the boundary of her claim and has been duly registered in Book 12, page 203, of the deed records of Yoakum County, Texas." Cultivation and fencing is averred, and title claimed under Article 5510, Revised Civil Statutes. This sufficiently set forth the title claimed. But it is asserted that if one reads Book 12, page 203 of the deed record, it will be found that the reference is to the divorce decree in Scurry County of September 19, 1916, and that it was not put on the deed records in Yoakum County till March 5, 1920, less than ten years before suit was filed, and moreover was a void judgment, and for both reasons could not serve as a written memorandum of title under Article 5510. That Article bars the owner of land from recovering it from another having peaceable and adverse possession, cultivating, using and enjoying it, after ten years; but only 160 acres can be thus acquired by limitation, unless "such possession is taken and held under some written memorandum of title, other than a deed, which fixes the boundaries of the possessor's claim and is duly registered," in which case the possession is construed to be coextensive with the boundaries there expressed. Now both the divorce decree, and the suit under examination, and the judgment rendered in it, describe two distinct tracts, thus: The Southeast ¼ of Section 800, Certificate 120 Block D Yoakum County, Texas, 160 acres, and the South ¼ of the Northeast ¼ same section, containing 40 acres. Now it may be that the court considered that the divorce decree, which purported to divest Jordan of his interest and vest it in Mrs. Jordan, was sufficiently registered from its date, as it was a judgment recorded in the court which rendered it as judgments ought to be; or it may be that it was considered that two tracts were involved, one of 160 and one of 40 acres, each of which had been possessed ten years, and since neither exceeded 160 acres, neither needed any written memorandum to extend the possession of it. Or it may be that the court thought the divorce decree validly transferred Jordan's title. Though any or all of such conclusions may have been erroneous, the judgment of a court having jurisdiction of such controversies, and having the defendant before it on regular substituted service, would not be void on collateral attack. It binds Jordan as to this title.

We are therefore of opinion that the cases must be reversed and remanded for further and not inconsistent proceedings.

Reversed.