# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30984

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2018

Lyle W. Cayce
Clerk

STEMCOR USA INCORPORATED,

Plaintiff

v.

CIA SIDERURGICA DO PARA COSIPAR, ET AL.,

Defendants

-----------------------------------------------

DAEWOO INTERNATIONAL CORPORATION,

Plaintiff - Appellant

v.

THYSSENKRUPP MANNEX GMBH,

Intervenor Plaintiff - Appellee

v.

AMERICA METALS TRADING L.L.P., ET AL.,

Defendants

Appeal from the United States District Court
for the Eastern District of Louisiana

No. 16-30984

Before HIGGINBOTHAM, GRAVES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

We grant Intervenor Plaintiff–Appellees' Motion for Panel Rehearing and deny the Motion For Rehearing En Banc. We withdraw the prior opinion, 870 F.3d 370 (5th Cir. 2017), and substitute the following.

This case is a dispute between two creditors, each of which attached the same pig iron owned by America Metals Trading L.L.P. ("AMT"). Plaintiff-Appellant Daewoo International Corp. ("Daewoo") sued AMT in the Eastern District of Louisiana, seeking an order compelling AMT to arbitrate and an attachment of the pig iron. Daewoo invoked both maritime attachment and the Louisiana non-resident attachment statute, which allows attachments in aid of any "action for a money judgment." La. Code Civ. Proc. art. 3542. Citing both types of attachment, the district court granted Daewoo its attachment. Following Daewoo's attachment, Intervenor-Appellee Thyssenkrupp Mannex GMBH ("TKM") attached the same pig iron in Louisiana state court. TKM then intervened in the federal suit, arguing that Daewoo's attachment should be vacated because (1) maritime jurisdiction was improper and (2) Louisiana non-resident attachment was inapplicable.

The district court agreed with TKM and vacated Daewoo's attachment. Specifically, the district court found that because Daewoo's underlying suit sought to compel arbitration, it was not an "action for a money judgment" and therefore Daewoo could not receive a non-resident attachment writ. Daewoo appeals only the district court's conclusion that its Louisiana non-resident attachment writ was invalid. We affirm on slightly different grounds.

I

Daewoo is a South Korean trading company. In May 2012, Daewoo entered into a series of contracts with AMT for the purchase of pig iron, to be

delivered in New Orleans.  The sale contracts contained arbitration clauses.  Although Daewoo made payments under the contracts, AMT never shipped the pig iron.  TKM is a German company.  Between June 2010 and February 2011, TKM entered into six contracts to purchase pig iron from AMT.  AMT never delivered.  In response to the breach of contract, TKM and AMT negotiated a settlement, which required AMT to make quarterly payments to TKM.  AMT did not pay.

On December 14, 2012, Daewoo filed suit in the Eastern District of Louisiana, seeking attachment of AMT's pig iron on board the M/V Clipper Kasashio, and asserting maritime jurisdiction.  The district court issued the attachment.  On December 21, Daewoo amended its complaint to seek a writ of attachment under the Louisiana non-resident attachment statute.  The writ was granted.  On December 22, the U.S. Marshals Service served Daewoo's writ on the cargo, which was then anchored in Kenner Bend.

On December 28, 2012, TKM filed suit in Jefferson Parish state court seeking a writ of attachment over the same pig iron that Daewoo attached on December 22.  TKM's state court writ of attachment was served on the cargo on December 29, 2012.  TKM then moved to intervene in Daewoo's federal suit.  TKM sought a federal writ of attachment over the pig iron, which was granted and served on the cargo on January 11.

That same day, all of the parties moved in federal court to sell the pig iron.  The court approved the sale.  The parties agreed that the proceeds of the sale would serve as substitute res, subject to TKM's jurisdictional attack on the federal attachments.

No. 16-30984

On May 9, 2016, TKM moved to vacate Daewoo's attachment.[1]  The district court agreed with TKM and vacated Daewoo's writ on August 4, 2016. With Daewoo's federal writ vacated, the first valid remaining writ was TKM's state court writ.  Accordingly, the district court ordered that the proceeds from the pig-iron sale be transferred to the Jefferson Parish state court.  On August 10, Daewoo moved to stay the district court's order, arguing that "[i]n the event that Daewoo's appeal is successful it would be difficult to retrieve the funds from the state court, assuming the state court has not already dispersed the funds, and would create serious issues of federal-state comity."  The district court denied the stay request because it was filed after the district court had sent the money to the Jefferson Parish state court.

II

The district court found federal subject matter jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").  We agree.

For a federal court to have jurisdiction under the Convention two requirements must be met: (1) there must be an arbitration agreement or award that falls under the Convention, and (2) the dispute must relate to that arbitration agreement.  These requirements flow from the text of two sections of the Convention.  The explicit jurisdictional provision is Section 203, which gives federal courts jurisdiction over all "action[s] or proceeding[s] falling under the Convention."  9 U.S.C. § 203.  "An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention."  9 U.S.C. § 202.

---

[1] TKM successfully moved to vacate a number of parties' attachments.  Only Daewoo appealed.

4

No. 16-30984

Accordingly, the first step for determining jurisdiction is deciding whether the "arbitration agreement or award . . . falls under the Convention." *Id.*

The next step, derived from Section 203, is to ask whether the "action or proceeding"—as opposed to the arbitration agreement or award—falls under the Convention.  The Convention's removal statute offers guidance on what "falling under" means because "[g]enerally, the removal jurisdiction of the federal district courts extends to cases over which they have original jurisdiction." *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 272 (5th Cir. 2002).  Section 205 of the Convention allows for removal whenever "the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention."  9 U.S.C. § 205.  We have read "relates to" to mean "has some connection, has some relation, [or] has some reference" to. *Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 378–79 (5th Cir. 2006).  And reading "falling under" to mean "relates to" makes sense grammatically.  "Fall" means "to come within the limits, scope, or jurisdiction of something."  Merriam-Webster's Collegiate Dictionary 418 (10th ed. 2002).  Accordingly, the second step of the jurisdictional question is asking whether the "action or proceeding" "relates to" a covered arbitration agreement or award. *See Fred Parks, Inc. v. Total Compagnie*, 981 F.2d 1255, 1992 WL 386999, at *1–2 (5th Cir. 1992) (unpublished) (treating the question of original and removal jurisdiction under the Convention as identical).

This two-step jurisdictional inquiry is consistent with case law interpreting the Convention. *See, e.g.*, *BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 487 & n.4 (5th Cir. 2012) (finding jurisdiction where there was a covered arbitration agreement and the suit sought appointment of arbitrators); *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 826 (2d Cir. 1990) (holding that jurisdiction over preliminary injunction in aid of covered arbitration was proper because the remedy sought did not try to "bypass

arbitration"); *Sunkyong Eng'g & Const. Co. v. Born, Inc.*, 149 F.3d 1174, 1998 WL 413537, at *5 (5th Cir. 1998) (unpublished) ("The FAA grants the United States district courts original federal question jurisdiction over arbitral awards and agreements to arbitrate that fall within the Convention."); *Venconsul N.V. v. Tim Int'l. N.V.*, 03Civ.5387(LTS)(MHD), 2003 WL 21804833, at *3 (S.D.N.Y. Aug. 6, 2003) ("*Borden* has been interpreted as recognizing a court's power to entertain requests for provisional remedies in aid of arbitration even where the request for remedies does not accompany a motion to compel arbitration or to confirm an award.").

Both jurisdictional requirements are met here. First, Daewoo's arbitration agreements with AMT are covered by the Convention. For an arbitration agreement to be covered by the Convention, four requirements must be met: (1) there must be an agreement in writing to arbitrate the dispute; (2) the agreement must provide for arbitration in the territory of a Convention signatory; (3) the agreement to arbitrate must arise out of a commercial legal relationship; and (4) at least one party to the agreement must not be an American citizen. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004); *Sunkyong*, 149 F.3d 1174, 1998 WL 413537, at *5; *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1144–45 (5th Cir. 1985). All four requirements are met here:

- There is an agreement in writing to arbitrate Daewoo and AMT's dispute.
- That agreement provides for arbitration in New York, and the United States is a signatory to the Convention.
- The agreement arises out of a commercial relationship between Daewoo and AMT.
- Both Daewoo and AMT are not American citizens.

Second, this suit is related to the AMT arbitration agreements because Daewoo seeks an attachment to facilitate the arbitration provided for in the AMT agreements. *See Borden*, 919 F.2d at 826 ("[T]he desire for speedy

decisions in arbitration is entirely consistent with a desire to make as effective as possible recovery upon awards, after they have been made, which is what provisional remedies do." (internal quotation marks and citation omitted)). Our decision in *E.A.S.T., Inc. of Stamford v. M/V Alaia*, 876 F.2d 1168 (5th Cir. 1989), strongly counsels towards recognizing subject matter jurisdiction based on the Convention to issue provisional remedies in aid of arbitration.[2] The court in *E.A.S.T.*, albeit in the context of a maritime attachment, found that the "the arrest of a vessel prior to arbitration is not inconsistent with the Convention." *Id.* at 1173. And the court noted that the Convention "does not expressly forbid pre-arbitration attachment" and that pre-arbitration attachment "may 'serve[] . . . as a security device in aid of arbitration.'" *Id.* (alteration in original) (quoting *Atlas Chartering Servs., Inc. v. World Trade*

[2] At one point at least, there was significant contrary authority on this issue. *See, e.g.*, *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) ("Because the district court correctly concluded that all of Simula's claims were arbitrable and the ICC arbitral tribunal is authorized to grant the equivalent of an injunction *pendente lite*, it would have been inappropriate for the district court to grant preliminary injunctive relief."); *I.T.A.D. Assocs., Inc. v. Podar Bros.*, 636 F.2d 75, 77 (4th Cir. 1981) ("[T]he attachment obtained by I.T.A.D. and the superseding bond posted by Podar are contrary to the parties' agreement to arbitrate and the Convention[.]"); *McCreary Tire & Rubber Co. v. CEAT S.p.A.*, 501 F.2d 1032, 1038 (3d Cir. 1974) (finding that the Convention does not allow a court to issue provisional remedies). It appears, however, that the courts that read jurisdiction under the Convention restrictively have retreated from their views and now, at least in most circumstances, recognize subject matter jurisdiction to grant provisional remedies in aid of arbitration. *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 377 n.19 (4th Cir. 2012) ("Because the Supreme Court has rejected the *McCreary* premise, *Podar Bros.* has been effectively overruled by the Court on the jurisdictional point and is not controlling precedent with respect to [the] injunction request [in aid of arbitration]."); *Toyo Tire Holdings Of Americas Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 980 (9th Cir. 2010) ("In contrast to *Simula*, [plaintiff] seeks an injunction to preserve the status quo until the arbitral panel can consider and rule upon Toyo's application for interim relief pending the arbitration panel's final decision. Allowing a district court to grant this type of relief is not contrary to the 'emphatic federal policy in favor of arbitral dispute resolution' of primary concern in *Simula*. To the contrary, in cases such as this, judicial interim relief may be necessary to preserve the meaningfulness of the arbitral process." (internal citation omitted)); *Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 55 (3d Cir. 1983) (allowing district court to maintain jurisdiction pending arbitration).

No. 16-30984

*Grp., Inc.*, 453 F. Supp. 861, 863 (S.D.N.Y. 1978)).

Indeed, *E.A.S.T.*'s reasoning mirrors the reasoning of courts that have found subject matter jurisdiction under the Convention to order state-law provisional remedies. Like the court in *E.A.S.T.*, those courts reason that "nothing in the Convention divests federal courts of jurisdiction to issue provisional remedies . . . such as an attachment, when appropriate in international arbitrations." *Bahrain Telecomms. Co. v. Discoverytel, Inc.*, 476 F. Supp. 2d 176, 181 (D. Conn. 2007); *see also China Nat'l Metal Prods. Imp./Exp. Co. v. Apex Dig., Inc.*, 155 F. Supp. 2d 1174, 1180 (C.D. Cal. 2001) ("Rather than conflicting with the parties' agreement to arbitrate, provisional remedies such as attachment reinforce arbitration agreements by ensuring that assets from which an arbitration award would be satisfied are secured while arbitration is pending."). *E.A.S.T.* therefore strongly suggests that this court recognizes jurisdiction under the Convention to issue state-law preliminary remedies in aid of arbitration.[3]

---

[3] And there are compelling reasons against reading jurisdiction under Section 203 as narrowly limited to the three remedies expressly allowed by the Convention (compelling arbitration and appointing arbitrators in Section 206 and confirming awards in Section 207). Namely,

> [n]othing in § 206 or § 207 limits the subject matter jurisdiction of federal courts. These sections merely identify the remedies that federal courts may grant, and do not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts. . . . To grant the remedies provided in those sections, the Court must first determine that it has jurisdiction . . . .
>
> Treating §§ 206 and 207 as jurisdictional provisions confuses the subject matter jurisdiction of federal courts with their remedial authority. Although jurisdiction is a word of many . . . meanings, there is a difference between the two. The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy . . . . The breadth or narrowness of the relief which may be granted under federal law . . . is a distinct question from whether the court has jurisdiction over the parties and the

No. 16-30984

Applying *E.A.S.T.* and the cases that follow it, the Convention grants jurisdiction over Daewoo's request for an attachment. Like the plaintiff in *E.A.S.T.*, Daewoo sought to attach the pig iron in order to facilitate arbitration and increase its chance of recovering on any award. Because Daewoo sought attachment to bring about a covered arbitration—that is, because Daewoo's suit related to a covered arbitration agreement—this court has subject matter jurisdiction.[4]

## III

The parties dispute whether Louisiana's non-resident attachment statute allows for attachment in aid of arbitration. The district court held that it does not. With great respect for the district court, and cognizant of the lack of instructional case law and limited briefing on this issue below, we decline to adopt a categorical approach to this question. Louisiana's non-resident attachment statute allows for attachment in aid of suits to confirm monetary arbitration awards. Moreover, because Louisiana law allows for attachment in aid of yet-to-be-brought actions, non-resident attachment may be available in aid of arbitration when an eventual confirmation suit is contemplated. Nevertheless, we affirm the district court's vacatur because Daewoo did not strictly comply with the attachment statute's procedural requirements.

As always, statutory interpretation begins with "the plain language and

---

subject matter. Any error in granting or designing relief does not go to the jurisdiction of the court.

*CRT Capital Grp. v. SLS Capital, S.A.*, 63 F. Supp. 3d 367, 374–75 (S.D.N.Y. 2014) (internal quotations marks, citations, and alterations omitted). Simply put, the question of what remedies are available in a Convention suit is distinct from the question of jurisdiction.

[4] We asked the parties to brief whether this court has personal jurisdiction under quasi in rem principles. We are satisfied that we have personal jurisdiction. *See Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 88–89 (1992); *Nassau Realty Co., Inc. v. Brown*, 332 So. 2d 206, 210 (La. 1976).

structure of the statute." *Coserv Ltd. Liab. Corp. v. Sw. Bell Tel. Co.*, 350 F.3d 482, 486 (5th Cir. 2003); *see also Arabie v. CITGO Petroleum Corp.*, 89 So. 3d 307, 312 (La. 2012) ("[A]ccording to the general rules of statutory interpretation, our interpretation of any statutory provision begins with the language of the statute itself."). Louisiana's attachment statute provides that "[a] writ of attachment may be obtained in any action for a money judgment, whether against a resident or a nonresident, regardless of the nature, character, or origin of the claim, whether it is for a certain or uncertain amount, and whether it is liquidated or unliquidated." La. Code Civ. Proc. art. 3542. A "money judgment" is a "[a] judgment for damages subject to immediate execution, as distinguished from equitable or injunctive relief." Black's Law Dictionary 972 (10th ed. 2014). Accordingly, an "action for a money judgment" is a civil or criminal judicial proceeding seeking monetary damages.

Louisiana case law supports this interpretation. In *de Lavergne v. de Lavergne*, 244 So. 2d 698 (La. App. 4th Cir. 1971), a Louisiana court of appeals was asked to decide whether a suit for alimony was an "action for a money judgment" within the meaning of Article 3542. The court concluded that it was, reasoning:

> A proceeding for alimony is a suit for judgment ordering the payment of money just as any other suit which has for its object the recovery of money in damages or in enforcement of any obligation to pay a sum of money whether liquidated or not. The difference is that in a judgment ordering the payment of a sum of money as alimony or for child support in addition to the ordinary remedies available to the judgment creditor for execution, there is the additional remedy of a contempt proceeding and the imposition of a penalty for noncompliance with the court's order. We must reject the argument of appellants that the additional remedy makes the action something other than one for a money judgment.

10

*Id.* at 704. The *de Lavergne* court's analysis aligns with the plain meaning of Article 3542. That is, the *de Lavergne* court first asked whether a suit for alimony sought an order compelling the payment of money. *Id.* Noting, however, that an alimony suit allowed for more than just a payment of money—because an alimony proceeding allowed "the additional remedy of a contempt proceeding and the imposition of a penalty for noncompliance with the court's order"—the court asked whether the additional remedy converted alimony into "something other" than an action "for a money judgment." *Id.* The court concluded that it did not because the additional contempt remedy was intended to make the money judgment more effective. *Id.*

And other sections of Louisiana law that refer to money judgments have similarly been interpreted to refer to judicial proceedings seeking judgments of money damages. *See Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 233 n.4 (5th Cir. 2001) ("[A]s a matter of statutory interpretation, in determining the meaning of a particular statutory provision, it is helpful to consider the interpretation of other statutory provisions that employ the same or similar language."). For example, Civil Code Article 3501 sets forth the prescriptive period for "money judgments": "A money judgment rendered by a trial court of this state is prescribed by the lapse of ten years . . . ." Courts interpreting Article 3501 have found that orders for "the payment of a sum of money" are money judgments, *see, e.g.*, *Eikert v. Beebe*, 188 So. 3d 1129, 1131 (La. App. 2d Cir. 2016), but that orders directing a party to take an action are not money judgments, *see, e.g.*, *Liquidator of Clinton & P.H.R. Co. v. Whitaker*, 22 La. Ann. 209, 209 (1870) ("The judgment directs the liquidator to discharge a duty attached to his office. It is not a money judgment."); *Williams v. Perry*, 436 So. 2d 1268, 1269 (La. App. 1st Cir. 1983) (judgment of partition is not a money judgment). Courts interpreting Code of Civil Procedure Article 2291

have similarly defined "money judgment." Article 2291 provides "[a] judgment for the payment of money may be executed by a writ of fieri facias directing the seizure and sale of property of the judgment debtor." The Article has been interpreted to distinguish between orders for the payment of money and orders directing a party to take an action. *See, e.g.*, *Madere v. Madere*, 660 So. 2d 1205, 1205 (La. 1995) (order of partition "did not create" a money judgment); *Lindy Invs., III, L.P. v. Shakertown Corp.*, 631 F. Supp. 2d 815, 821 & n.13 (E.D. La. 2008) (suit seeking declaration that condition precedent for payment was met was not a suit for money judgment).

Based on this definition of "action for a money judgment," we agree with the district court that a suit to compel arbitration (like this suit) is not directly an action for a money judgment. A motion to compel arbitration seeks an order requiring a party to take an action—namely, to arbitrate the dispute. Accordingly, a suit seeking to compel arbitration is not an "action for a money judgment," and Daewoo's suit seeking to compel arbitration cannot underlie a Louisiana non-resident attachment writ. On the arguments raised by Daewoo, its appeal ends here.

We further take the opportunity to note that Louisiana law provides, in limited circumstances, that an attachment may issue before the suit underlying the attachment is filed. Article 3502 of the Louisiana Code of Civil Procedure provides:

> A writ of attachment . . . may issue before the petition is filed, if the plaintiff obtains leave of court and furnishes the affidavit and security provided in Article 3501. In such a case the petition shall be filed on the first judicial day after the issuance of the writ of attachment . . . unless for good cause shown the court grants a longer delay.

Article 3502 allows for the possibility of attachments in suits like this one. In

12

No. 16-30984

Louisiana, arbitral awards are convertible into money judgments in confirmation proceedings. *See, e.g.*, *Matherne v. TWH Holdings, L.L.C.*, 136 So. 3d 854, 860 (La. App. 1st Cir. 2013) ("A confirmed arbitration award is considered to be a valid and final judgment for purposes of res judicata."); La. Stat. § 9:4212 ("Upon the granting of an order confirming, modifying, or correcting an award, judgment may be entered in conformity therewith in the court wherein the order was granted."); La. Stat. § 9:4214 (noting that when an award is converted to a judgment, "[t]he judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action, and it may be enforced as if it had been rendered in an action in the court in which it is entered"). Thus, an action to confirm a money award is an action for a money judgment. And because a confirmation suit can be an action for a money judgment, Article 3502 allows for attachments to be issued before the contemplated underlying confirmation suit is brought.[5]

Put into context, Article 3502 allows for attachments to issue in aid of arbitration so long as the party seeking the attachment (1) complies with the

---

[5] Reading Louisiana law to allow for pre-suit attachment in aid of arbitration makes sense of the statutory scheme as a whole because other provisions of Louisiana law assume that some state-law preliminary remedies are available to aid arbitration. Louisiana has adopted the UNCITRAL Model Law on interim measures in arbitration, which provides, "[i]t is not incompatible with an arbitration agreement for a party to request, before or during arbitral proceedings, from a court an interim measure of protection and for a court to grant the measure." La. Stat. § 9:4249. Moreover, the UNCITRAL Model Law indicates that attachment is one of the interim remedies that may aid an arbitration. It would be strange for Louisiana to have adopted the UNCITRAL Model Law without allowing for state law interim remedies in aid of arbitration. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 121 (2000) ("In determining whether Congress has specifically addressed the question at issue, the court should not confine itself to examining a particular statutory provision in isolation. Rather, it must place the provision in context, interpreting the statute to create a symmetrical and coherent regulatory scheme."); *Green v. La. Underwriters Ins. Co.*, 571 So. 2d 610, 616 (La. 1990) ("If two statutes can be reconciled by a fair and reasonable interpretation, we must read the statutes so as to give effect to each.").

No. 16-30984

requirements of Article 3502 and (2) shows good cause for a pre-petition attachment, which will usually require showing that arbitration is likely to result in a confirmation suit and also showing a need for an immediate attachment (which may include an inquiry into the imminence of the arbitration or confirmation suit).

Although Daewoo's briefs did not rely on Article 3502 as a reason to reverse the district court, our independent review of the record confirms that Daewoo did not satisfy step one. Because attachment is a "harsh" remedy, the Louisiana statutes "providing for a Writ of Attachment . . . must be strictly and literally complied with." *Barnett Marine, Inc. v. Van Den Adel*, 694 So. 2d 453, 458 (La. App. 5th Cir. 1997); *accord Yorkwood Sav. & Loan Ass'n v. Thomas*, 379 So. 2d 798, 799 (La. App. 4th Cir. 1980). Failure to do so renders a granted writ a "nullity." *Lee v. Lee*, 38 So. 2d 66, 69 (La. 1948). The record does not disclose that Daewoo strictly and literally complied with Article 3502's requirements. We see no indication that Daewoo invoked Article 3502 when it sought a writ, that the district court granted Daewoo permission to file a petition on "the first judicial day after the issuance of the writ," or that the district court made the good-cause finding to permit a later filing. La. Code Civ. Proc. art. 3502.[6]

---

[6] On this score, the dissent observes that Daewoo's compliance with Article 3502 "was not raised on appeal, [that] neither party presented any such argument, and [that] the district court made no such finding." Dissenting Opinion at 1. Indeed, but the forfeiture was Daewoo's, not TKM's. The court that issued the attachment did not address Article 3502 because Daewoo did not invoke that provision; nor did Daewoo rely on that law as ground to reverse the district court's judgment. As for the merits: true enough, "the statute *allows* the court to grant a longer delay" beyond Article 3502's default timeline, Dissenting Opinion at 2 (emphasis added), but the attachment order said nothing of deadline extensions or the required good-cause showing, *contra* La. Code Civ. Proc. art. 3502. Finally, forfeiture principles also work against the dissent's contention that "Louisiana law permits only the party whose assets were attached to raise procedural challenges to the attachment." Dissenting Opinion at 2. This argument implicates statutory, not constitutional, standing, *see Bd. of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417 (5th Cir. 2012) ("Unlike constitutional standing, prudential standing arguments may be waived."); *cf. Harold H.*

No. 16-30984

Although Article 3502 allows parties to seek an Article 3542 attachment before commencing confirmation proceedings, Daewoo neither invoked nor complied with Article 3502's requirements when it sought the attachment here.

We AFFIRM.

---

*Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) (noting that constitutional standing, unlike statutory standing, is unwaivable), and Daewoo did not stake this position until its reply brief, *see, e.g.*, *Flex Frac Logistics, L.L.C. v. N.L.R.B.*, 746 F.3d 205, 208 (5th Cir. 2014) ("Ordinarily, arguments raised for the first time in a reply brief are waived."); *United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010) ("We look to an appellant's initial brief to determine the adequately asserted bases for relief." (quoting *Knatt v. Hosp. Serv. Dist. No. 1*, 327 F. App'x 472, 483 (5th Cir. 2009)).

No. 16-30984

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

I would conclude that the underlying action seeking to compel arbitration here is clearly an "action for a money judgment" under Louisiana's non-resident attachment statute. See La. Code Civ. P. art. 3542. Because I would vacate the judgment of the district court and remand, I respectfully dissent.

As the majority acknowledges, Daewoo has made it clear from the outset that it would be pursuing a money judgment. The "nature, character, or origin of the claim" just happens to be arbitration. La. Code Civ. P. art. 3542. The majority cites various cases for its conclusion that, under the definition of "action for a money judgment," a suit to compel arbitration is not directly an action for a money judgment. However, those cases are inapposite. The majority declares, incorrectly, that "[o]n the arguments raised by Daewoo, its appeal ends here." As the majority has previously conceded, the inquiry absolutely does not end there. The majority's declaration is wholly undermined by the analysis which immediately follows that declaration. Clearly that analysis continues to be the basis for the majority's decision on rehearing. Further, the majority correctly concedes that Article 3502 allows for attachments in suits like this. *See Matherne v. TWH Holdings, L.L.C.,* 136 So.3d 854, 860 (La. App. 1st Cir. 2013); *see also* La. Stat. § 9:4249.[1] This concession establishes that the district court erred in vacating the attachment on the basis that the underlying action was not an action for a money judgment.

Rather than properly concluding that the district court erred, the majority instead concludes that "[t]he record does not disclose that Daewoo

---

[1] TKM's counsel has also conceded that an action to confirm an arbitration award would be an action for a money judgment.

16

No. 16-30984

strictly and literally complied with Article 3502's requirements." Saying, "[w]e see no indication that Daewoo invoked Article 3502 when it sought a writ, that the district court granted Daewoo permission to file a petition 'on the first judicial day after the issuance of the writ,' or that the district court made the good-cause finding to permit a later filing. La. Code Civ. Proc. art. 3502." Yet that issue was not raised on appeal, neither party presented any such argument, and the district court made no such finding. Moreover, as TKM argues on rehearing, the majority fails to identify any exceptional circumstance to justify consideration of a new issue sua sponte. *See Martinez v. Tex. Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002).

Notwithstanding the lack of exceptional circumstances, I disagree with the majority's analysis of and conclusion that Daewoo failed to comply with the procedural requirements of Article 3502 of the Louisiana Code of Civil Procedure. As Daewoo asserts in its response to the petition for rehearing, the statute allows the court to grant a longer delay and Daewoo's application was based on an affidavit stating that it would be filing for arbitration within 30 days. Additionally, as Daewoo asserts, longstanding Louisiana law permits only the party whose assets were attached to raise procedural challenges to the attachment.

In *Gilkerson-Sloss Commission Co. v. Bond*, 11 So. 220 (La. 1892)[2], the Supreme Court of Louisiana said:

> On the first point urged by the interveners it is elementary that in an attachment suit the intervener will not be permitted to urge defenses personal to the defendants. The formality and regularity of the proceedings, the rightful issuing of the attachment, in the absence of fraud and collusion between plaintiff and defendants, are matters pertaining exclusively to the

---

[2] There appears to be a typographical error in the listing of this case which says "*Gilkeson*." The caption and body of the opinion, as well as some other opinions involving the same company, indicate the spelling "*Gilkerson*."

> defendant. The intervener is limited to the assertion of his own rights, to show that the property attached is his; that he has a superior privilege on it, or, as alleged in this case, the plaintiffs and defendants perpetrated a fraud in the issuing of the attachment in order to defeat his pursuit of the property. He has nothing to do with the irregularity of the affidavit, the insufficiency of the attachment bond, and other irregularities in the proceedings.

*Id*. at 221. *See also Gen'l Motors Acceptance Corp. v. Jordan*, 65 So.2d 627, (La. Ct. App. 1st Cir. 1953) ("All of o[u]r jurisprudence on this point shows a long standing and well-defined rule that an intervenor must take the case as he finds it, and he is not allowed to retard the progress of the main action."). *Id.* at 629; *Fleming v. Shields*, 21 La. Ann. 118, 119-20 (1869) ("In the absence of fraud and collusion, the intervenor will not be permitted to urge defenses which are personal to the defendant."); and *West v. His Creditors*, 8 Rob. 123, 128 (La. 1844) ("An intervenor who claims property in controversy between other parties, cannot interfere therein any further than to prove his right to the property. He cannot contest the plaintiff's claim against the defendant, nor urge any irregularities in the suit."). This court, in *Berger v. First Federal Savings and Loan Association of Warner Robbins, Ga.,* 824 F.2d 400, 402 (5th Cir. 1987), recognized the holding from *Gilkerson-Sloss*, cited above, that "wrongful attachment may not be raised by intervenor." Also, in *Fisher v. Jordan*, 116 F.2d 183, 185 (5th Cir. 1940), this court prohibited such a collateral attack on an attachment.

The majority does not conclude that there was fraud and collusion here, and the cases cited by the majority are easily distinguished. In *Barnett Marine, Inc. v. Van Den Ade*, 694 So.2d 453, 458 (La. App. 5th Cir. 1997), the matter involved the defendants whose assets were attached, not an intervenor. The majority also cites *Yorkwood Sav. & Loan Ass'n v. Thomas*, 379 So.2d 798, 799 (La. App. 4th Cir. 1980), and *Lee v. Lee*, 38 So.2d 66, 69 (La. 1948), but,

again, those cases did not involve an intervenor. The majority argues that Daewoo somehow forfeited the right to rebut any argument that it did not procedurally comply with Article 3502 even though TKM waived the very issue of Daewoo's procedural compliance by never raising it. That argument is illogical. The majority offers no authority for its statement that "forfeiture principles also work against the dissent's contention that 'Louisiana law permits only the party whose assets were attached to raise procedural challenges to the attachment.'" Instead, the majority concedes that "[t]his argument implicates statutory, not constitutional, standing" and then cites *Board of Mississippi Levee Commissioners v. Environmental Protection Agency*, 674 F.3d 409, 417 (5th Cir. 2012), for the proposition that, "[u]nlike constitutional standing, prudential standing arguments may be waived."[3] In doing so, the majority acknowledges that any procedural compliance argument TKM may have against Daewoo's attachment is waived. It is wholly improper for the majority to raise, sua sponte, an issue that has been waived and then conclude that Daewoo forfeited the right to assert that the issue is waived.

Regardless, Daewoo did not fail to raise any constitutional or procedural argument in its initial brief. Daewoo also did not raise any new issue in its reply brief. Instead, Daewoo merely provided additional authority regarding the issues it raised in its initial brief. Moreover, Daewoo was not aware of its need to address TKM's lack of standing to raise a procedural challenge to the attachment as the dispositive issue until the majority decided the appeal on

---

[3] The majority also cites various other cases to support its propositions that "constitutional standing, unlike statutory standing, is unwaivable" and that this court should decline to address the merits of a constitutional argument not raised in the initial brief. *See Harold H. Huggins Realty, Inc. v. FNC, Inc.* 634 F.3d 787 (5th Cir. 2011*); see also Flex Frac Logistics, L.L.C. v. N.L.R.B.*, 746 F.3d 205, 208 (5th Cir. 2014); and *United States v. Scroggins*, 599 F.3d 433 (5th Cir. 2010). But none of these cases address the issue which is raised here.

No. 16-30984

this procedural issue rather than the issues actually raised or decided in the district court. This is particularly so when TKM still maintains that it is not challenging whether Daewoo complied with the procedural requirements.

TKM asserts on rehearing that the standing argument is "undiscerning" and argues that the language from *Gilkerson* "that he has a superior privilege," quoted above, gives it standing to raise a procedural challenge to the attachment. *Gilkerson-Sloss*, 11 So. At 221. Notwithstanding that the referenced language in no way confers standing to raise a procedural challenge to Daewoo's attachment, TKM then asserts that, under *Fleming*, it is not asserting a procedural irregularity. Instead, TKM argues that it is attacking the "very availability of an Article 3541 attachment" because the action "is not for a money judgment."[4] However, as the majority concedes, this is an action for which article 3541 attachment is proper, thus, TKM's argument is defeated. Further, like the majority, TKM fails to distinguish any of the cases on point and does not argue there was fraud and collusion.

For these reasons, I would vacate the judgment of the district court and remand. Accordingly, I respectfully dissent.

---

[4] Yet, the majority ignores TKM's concession on rehearing that it is not asserting a procedural irregularity.

20